[No. A069386. First Dist., Div. Five. June 27, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
BRIAN DENNIS SHANNON, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*\*Pursuant to rules 976 and 976.1, California Rules of Court, this opinion is certified for publication, with the exception of parts III. and IV.

COUNSEL

Riordan & Rosenthal, Dennis P. Riordan and Dylan L. Schaffer for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Catherine A. Rivlin and Jeremy Friedlander, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

KING, J.—Appellant Brian Dennis Shannon was convicted by jury of second degree murder by use of a firearm (Pen. Code, §§ 187, subd. (a); 12022.5, former subd. (a)).[1] He seeks reversal based upon alleged error in the standard form instruction for voluntary manslaughter, CALJIC No. 8.40. He also claims the jury's verdict was the product of undue influence because of juror misconduct and ribbons worn by spectators in the courtroom. We affirm.

I. *Facts*

On the morning of October 17, 1993, at 8:06 a.m., appellant made a 911 call from his residence at 701 Palma in El Granada. A tape of the call was played for the jury. Appellant requested an ambulance. Upon prompting by the dispatcher, appellant stated that his girlfriend had been shot. When asked if she had shot herself, appellant replied, "No, I think I shot her actually . . . the whole damn thing was an accident . . . she was just sitting there and I . . . she is gurgling and it's driving me crazy!"

When emergency personnel arrived, they found the victim, 24-year-old Kimberly Stack, appellant's girlfriend, lying on the living room floor. She

---

[1]Unless otherwise noted, all statutory references are to the Penal Code.

suffered a single gunshot wound to the left temple. She was nude from the waist up and had numerous bruises on her face and upper body. Appellant was shirtless and had fresh scratches on his face and upper body. A .38-caliber revolver, along with numerous other firearms, were located in the residence. Appellant identified a .38-caliber revolver, which had been modified to have a "hair trigger," as the murder weapon.

Subsequent laboratory testing revealed human tissue inside the barrel of the murder weapon, confirming that the victim's death was the product of a close contact gunshot wound to the left temple. It was determined that the fatal shot was fired, at most, only a fraction of an inch from the victim's head. There was semen in the victim's vaginal cavity, indicating recent sexual intercourse. Both appellant and the victim had cocaine and/or alcohol in their systems at the time of the murder. Several neighbors testified they heard loud arguing coming from the direction of appellant's residence on the night of the shooting.

The prosecution argued that appellant either intended to kill the victim or behaved with wanton disregard for human life by brandishing a gun that he knew was particularly dangerous. The defense argued the shooting was accidental.

The trial court instructed the jury on first and second degree murder and voluntary and involuntary manslaughter. The jury was also instructed on excusable accident, heat of passion, sudden quarrel and voluntary intoxication.

The jury returned its verdict of second degree murder, finding true the personal use allegation. Appellant was sentenced to 15 years to life for the murder with a consecutive 4-year term for the gun use. In addition, appellant received a 16-month consecutive term for unlawfully possessing an assault weapon (§ 12280, subd. (b)), a charge to which he pled nolo contendere at the commencement of trial.

## II.  *Instructional Error*

■    Appellant contends the trial court erred in failing to modify, sua sponte, the standard form instruction defining the intent required for voluntary manslaughter. Murder and manslaughter were distinguished for the jury in that murder requires malice while manslaughter does not. (CALJIC No. 8.50.) The court instructed the jury that manslaughter is of two types, voluntary and involuntary. (CALJIC No. 8.37.) The challenged instruction on voluntary manslaughter, as given to the jury, read as follows: "The crime

of voluntary manslaughter is the unlawful killing of a human being without malice aforethought *when there is an intent to kill.* There is no malice aforethought if the killing occurred upon a sudden quarrel or heat of passion. In order to prove the commission of the crime of voluntary manslaughter, each of the following elements must be proved: One, that a human being was killed; two, that the killing was unlawful; and three, that the killing was done *with the intent to kill.* (CALJIC No. 8.40, italics added.)"

Involuntary manslaughter was defined as the unlawful killing of a human being "without malice aforethought and without an intent to kill." (CALJIC No. 8.45.) The jury was also instructed that appellant could be found guilty of second degree murder if he had no intent to kill but, nonetheless, acted deliberately with a conscious disregard for human life. (CALJIC No. 8.31)

The crux of appellant's argument is that because CALJIC No. 8.40 included the specific intent to kill as a necessary element of voluntary manslaughter, the instruction precluded the jury from considering whether appellant had acted upon a sudden quarrel or in the heat of passion while committing the act resulting in the victim's death if the jury believed only that appellant had acted in conscious disregard for life but not with the specific intent to kill. The net effect of the quoted instructions, appellant argues, is that the jury was precluded from considering the mitigating effects of provocation unless they found appellant acted with the express intent to kill. To wit, if the jury found appellant had not formed the express intent to kill but acted only in conscious disregard for human life, which establishes nothing more than implied malice, the mitigating effects of any provocation would be irrelevant, and the jury would be forced to find appellant guilty of second degree murder. Appellant contends that this is neither legally nor logically sound since the more blameworthy state of mind, i.e., express intent to kill, would result in a lesser punishment than that necessarily imposed for acts committed without an express intent and, consequently, a less culpable mental state. Appellant points out that this case raises a novel "issue regarding the adequacy of an instruction used in hundreds of cases throughout California courts."

The People emphasize that CALJIC No. 8.40, the standard voluntary manslaughter instruction, is patterned after language from long-standing California Supreme Court precedent. (*People* v. *Hawkins* (1995) 10 Cal.4th 920, 958-959 [42 Cal.Rptr.2d 636, 897 P.2d 574]; see also *People* v. *Brubaker* (1959) 53 Cal.2d 37, 44 [346 P.2d 8]; *People* v. *Ray* (1975) 14 Cal.3d 20, 28 [120 Cal.Rptr. 377, 533 P.2d 1017]; *People* v. *Forbs* (1965) 62 Cal.2d 847, 852 [44 Cal.Rptr. 753, 402 P.2d 825].) Significantly, our Supreme Court has defined voluntary manslaughter as a specific intent crime

requiring an intent to kill (*People* v. *Gorshen* (1959) 51 Cal.2d 716, 732-733 [336 P.2d 492], disapproved on another point in *People* v. *Wetmore* (1978) 22 Cal.3d 318, 324, fn. 5 [149 Cal.Rptr. 265, 583 P.2d 1308]). Despite appellant's invitation, we are not in a position to independently interpret the penal statute defining voluntary manslaughter (§ 192) to arrive at a different conclusion. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]; see *People* v. *Eastman* (1993) 13 Cal.App.4th 668, 674-675 [16 Cal.Rptr.2d 608].)

Courts which have modified the standard formulation of the intent required for voluntary manslaughter have done so at their peril. For instance, in *People* v. *Fusselman* (1975) 46 Cal.App.3d 289 [120 Cal.Rptr. 282], the court found the instruction on the relationship of the diminished capacity defense to the specific intent required for voluntary manslaughter to be erroneous on its face where the court defined the necessary intent as the intent "to commit murder." The court explained: "[T]he intent which is required for first degree murder, as well as voluntary manslaughter, is to kill; we know of no judicially recognized mental state of an intent 'to murder.'" (*Id.* at p. 304.)

In *People* v. *Germany* (1974) 42 Cal.App.3d 414 [116 Cal.Rptr. 841], the court found the instructions given on the intent required for voluntary manslaughter to be erroneous where the court struck all references to "specific intent" and substituted "criminal intent." The court agreed with appellant that these instructions could have potentially misled the jury into believing that the crime of voluntary manslaughter required only a general intent. This was error because "[v]oluntary manslaughter is a specific intent crime" requiring an intent to kill. (*Id.* at p. 418, citing *People* v. *Gorshen*, *supra*, 51 Cal.2d at pp. 732-733.)

With the weight of this authority as a backdrop, appellant contends the trial court should have modified, sua sponte, CALJIC No. 8.40 to instruct the jury that an *unintentional* killing, committed in conscious disregard for its consequences, can be reduced to voluntary manslaughter by the existence of heat of passion or sudden quarrel. We cannot agree. We find nothing which could support an argument that CALJIC No. 8.40 misstates the law on voluntary manslaughter as decided by our Supreme Court.

The crux of appellant's argument is that if the jury found an unintentional killing committed with adequate provocation to negate malice, the court's instructions gave the jury no choice but to convict appellant of second

degree murder.[2] Appellant's argument does make sense. How can a conviction of second degree murder not require an intent to kill while voluntary manslaughter, a less serious crime, requires an intent to kill? Nowhere in section 192, which defines voluntary manslaughter, is an intent to kill mentioned. This element, missing from the statutory definition, is stated in decisional law, often without analysis. As an inferior court we are bound by the Supreme Court's decision that an intent to kill is an element of voluntary manslaughter. We are limited to recommending to the Supreme Court that this case justifies a reexamination of their previous decisions on this issue.

III., IV.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Peterson, P. J., and Haning, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 16, 1996. Kennard, J., was of the opinion that the petition should be granted.

---

[2]The only evidence to support this argument is inadmissible. Three weeks after the jury reached its verdict one member of the jury, writing to the trial judge expressing appreciation for having served on the jury, wrote: "I think your jury would have gone with involuntary manslaughter, if it had not been the wording of your instructions (malice of forthought [sic] and intent) and as 1 of the 12 jurors we did vote at 100% there was no intent. We were very confused and felt because of those words we could not go with manslaughter, so we went reluctantly with the 2nd degree as your instructions said we had to follow them even if we didn't like them."

*See footnote, ante, page 1365.