[No. F044512. Fifth Dist. Apr. 26, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN BORREGO PARRAS, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION†]**

†Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts 3–5 and the concurring and dissenting opinion.

**COUNSEL**

Heather MacKay, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, Kathleen A. McKenna, Louis M. Vasquez and Brian Alvarez, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**DAWSON, J.**—John Borrego Parras (appellant) was acquitted of second degree murder but convicted of the lesser offense of voluntary manslaughter (Pen. Code, § 192, subd. (a))[1] in the beating death of Raquel Lombera. Though the homicide occurred in 1989, appellant was not charged until 2002. He was convicted the following year.

We find no merit to appellant's claims of instructional and sentencing error. We agree that he received an unauthorized fine and order it stricken. In all other respects, the judgment is affirmed.

### FACTS

The badly beaten body of Raquel (also known as Rachel) Lombera was found in her apartment on September 18, 1989. Clad in only a shirt, her body lay between the couch and television. The remainder of her clothing was stacked next to the couch. She had a cut on her mouth, a large gash on her forehead, and her eyes were swollen. Her blood and teeth were spattered on the couch; blood was spattered on a picture on the wall behind her head.

---

[1] Further statutory references are to the Penal Code unless otherwise indicated.

Pieces of a broken wooden chair were scattered about the room. Blood and hair were embedded in a portable radio found near her foot, and a telephone was nearby, with the line pulled from the wall. Six empty beer cans were found in the apartment. Ms. Lombera's car was located a short distance from the apartment complex.

An autopsy revealed Ms. Lombera suffered a compound fracture to her jaw. Four of her teeth were knocked out. She had defensive wounds on her hands and arms and 12 to 15 distinct wounds to her head. An L-shaped wound on the top of her head was consistent with an injury from the portable radio found near her body. The injury caused a brain hemorrhage and, several hours later, her death.

The case remained unsolved for 13 years, but, in February 2002, appellant was identified as a possible suspect from an artist's sketch.

Appellant was interviewed by Detective Brandon Shoemaker in 2002 in San Diego. In a taped interview, appellant admitted he had been with Ms. Lombera at her apartment in September 1989. He related that, at that time, he was a heavy drinker and suffered from "blackouts." He and Ms. Lombera worked at the same bar. They were sexually involved, but appellant's wife was unaware of the relationship.

On the night of September 16, appellant left the bar with Ms. Lombera and several others to drink beer. Later, appellant and Ms. Lombera went to her apartment to drink more beer. After they had sex on the couch, appellant told Ms. Lombera he no longer wanted to see her. Ms. Lombera threatened to tell appellant's wife about the relationship, and they began to fight. Appellant was "mad" and hit Ms. Lombera two or three times in the face. Appellant did not realize he had killed Ms. Lombera, because she was still moving when he left her apartment. Appellant took Ms. Lombera's car and drove to his stepson's apartment.

At trial, appellant testified he was an alcoholic and, at the time of the incident, drank nine to 12 beers a day. Appellant stated he had known Ms. Lombera for approximately six months. On the night in question, appellant drank several beers at home and six beers at the bar. Appellant and Ms. Lombera left the bar with two others and drank more beer. Eventually, appellant and Ms. Lombera went to her apartment, where they drank beer and had sex. Appellant told Ms. Lombera he no longer wanted to see her, and she threatened to tell appellant's wife he had been with her. Ms. Lombera went to get the phone, and appellant yanked it from the wall. Ms. Lombera hit

appellant, and he hit her back. Appellant did not recall hitting Ms. Lombera with anything other than his hand, or hitting her in any way that would have been life-threatening. He did not intend for her to die. Appellant claimed not to have known Ms. Lombera died until Detective Shoemaker told him in 2002. He had been very drunk and remembered nothing else from that night.

Appellant's former daughter-in-law testified that, at the time of the incident, appellant drank daily and frequently to excess. She had witnessed a number of occasions when appellant behaved violently when drunk and then could not remember what he had done.

## DISCUSSION

### 1. *Voluntary manslaughter instructions*

Appellant was charged with murder and convicted of voluntary manslaughter. He contends the trial court erred in giving an instruction on voluntary manslaughter which allowed a conviction based on a homicide committed without an intent to kill. He argues that, instead, the jury should have been instructed that voluntary manslaughter requires such intent.

■ Murder is the unlawful killing of a human being with malice aforethought. (§ 187, subd. (a).) ■ Manslaughter is the unlawful killing of a human being without malice and is divided into three classes: voluntary, involuntary, and vehicular. (§ 192.) "A defendant lacks malice and is guilty of voluntary manslaughter in 'limited, explicitly defined circumstances: either when the defendant acts in a "sudden quarrel or heat of passion" [citation], or when the defendant kills in "unreasonable self-defense" . . . .' [Citation.]" (*People v. Blakeley* (2000) 23 Cal.4th 82, 87–88 [96 Cal.Rptr.2d 451, 999 P.2d 675] (*Blakeley*); see § 192, subd. (a).)

■ Prior to our Supreme Court's opinions in *Blakeley* and the companion case of *People v. Lasko* (2000) 23 Cal.4th 101 [96 Cal.Rptr.2d 441, 999 P.2d 666] (*Lasko*), it had been held that the intent to kill was an essential element of voluntary manslaughter. (See, e.g., *People v. Shannon* (1996) 46 Cal.App.4th 1365, 1368–1369 [54 Cal.Rptr.2d 416].) In *Blakeley* and *Lasko*, however, our high court held to the contrary. Instead, voluntary manslaughter may also occur when one kills with a conscious disregard for life but no intent to kill. Following the decisions in *Blakeley* and *Lasko*, former CALJIC No. 8.40 was revised to include as a required element of the crime of

voluntary manslaughter proof that "[t]he perpetrator of the killing either intended to kill the alleged victim, or acted· in conscious disregard for life . . . ." (CALJIC No. 8.40 (2001 rev.).)

█ . Appellant contends the trial court committed prejudicial instructional error by giving the post-*Blakeley/Lasko* voluntary manslaughter instruction (CALJIC No. 8.40), when the charged offense occurred in 1989. Because the new version of CALJIC No. 8.40 enlarged the crime of voluntary manslaughter by not requiring an intent to kill, appellant argues, its retroactive application violated his state and federal constitutional rights to due process. Absent the erroneous instruction, he concludes, he would have been convicted of involuntary rather than voluntary manslaughter. Respondent contends the instruction as given was proper. We agree.

█ The defendant in *Blakeley*, who was charged with murder, claimed self-defense and imperfect self-defense, and was convicted of voluntary manslaughter. He contended on appeal that the trial court erred in refusing to instruct on involuntary manslaughter based on an unintentional killing done without malice because of the unreasonable belief in the need to defend against the victim. The court rejected the argument and held that "when a defendant, acting with a conscious disregard for life, unintentionally kills in unreasonable self-defense, the killing is voluntary rather than involuntary manslaughter." (*Blakeley, supra*, 23 Cal.4th at p. 91.) The court went on, however, to hold that this rule could not be applied retroactively to the *Blakeley* defendant's case because it constituted an "unforeseeable judicial enlargement of the crime of voluntary manslaughter." (*Id.* at p. 92.) As explained by the court: "[W]hen defendant killed [the victim six years earlier] this court had not yet addressed the issue of whether an unintentional killing in unreasonable self-defense is voluntary or involuntary manslaughter. But three decisions by the Courts of Appeal in this state held that such a killing was only involuntary manslaughter [citations]; no case held to the contrary. Thus, our decision today—that one who, acting with conscious disregard for life, unintentionally kills in unreasonable self-defense is guilty of voluntary manslaughter rather than the less serious crime of involuntary manslaughter—is an unforeseeable judicial enlargement of the crime of voluntary manslaughter, and thus may not be applied retroactively to defendant." (*Ibid.*)

In *Lasko*, the defendant was convicted of second degree murder after the beating death of his employer, which he contended occurred in the heat of passion. (*Lasko, supra*, 23 Cal.4th at pp. 104–105.) The jury was instructed on murder and on the lesser included offense of voluntary manslaughter. On appeal, the defendant argued the trial court erroneously instructed that intent to kill was an essential element of voluntary manslaughter, forcing the jury to

reach a murder verdict if it found no intent to kill. (*Id.* at p. 106.) Interpreting section 192, subdivision (a), the Supreme Court found the plain language of the statute contained no requirement of intent to kill.[2] Therefore, the court held that a killing in a sudden quarrel or heat of passion constitutes voluntary manslaughter whether the defendant acts with an intent to kill or, instead, in conscious disregard for human life. (*Lasko*, at pp. 108–109.) The court then went on, however, to find that the defendant was not prejudiced by the erroneous pre-*Lasko* instruction.

In *People v. Crowe* (2001) 87 Cal.App.4th 86 [104 Cal.Rptr.2d 319] (*Crowe*), the court reasoned that *Lasko* applies whether or not the offense preceded that decision—that is, it applies retroactively—because *Lasko* did not enlarge the crime of voluntary manslaughter in the context of a sudden quarrel or heat of passion, but merely clarified existing law. (*Crowe*, at pp. 94–95.) As stated in *Crowe*: ". . . *Lasko* . . . did not 'redefine' the crime of voluntary manslaughter. Instead, it simply acknowledged the exact words contained in the crime's statutory definition and gave effect to the fact that the Legislature had not included intent to kill in that definition although previous decisions had not given proper recognition to that omission." (*Crowe*, *supra*, 87 Cal.App.4th at p. 95.)

In *People v. Johnson* (2002) 98 Cal.App.4th 566 [119 Cal.Rptr.2d 802] (*Johnson*), the court suggested a way to reconcile "the seemingly conflicting commands of *Blakeley*, on the one hand, and *Lasko* and *Crowe*, on the other hand, regarding retroactivity." (*Johnson*, at p. 577.)

■ "Regardless of the date of the offense, it is error to instruct the jury that voluntary manslaughter requires a finding that 'the killing was done with the intent to kill' if the defendant claims the killing was done in the heat of passion or a sudden quarrel. [Citations.] If the defendant asserts the killing was done in an honest but mistaken belief in the need to act in self-defense, however, and the offense occurred prior to June 2, 2000, the jury must be instructed that unintentional killing in unreasonable self-defense is involuntary manslaughter. [Citation.]" (*Johnson*, *supra*, 98.Cal.App.4th at p. 577.)

Appellant takes issue with *Johnson* and argues the retroactivity rationale of *Blakeley* must be applied here because: (1) retroactive application of an expanded definition of voluntary manslaughter worked to his disadvantage, which distinguishes ·*Crowe* and *Johnson*, where the expanded definition

---

[2] Section 192, subdivision (a) reads: "Manslaughter is the unlawful killing of a human being without malice. It is of three kinds: [¶] (a) Voluntary—upon a sudden quarrel or heat of passion."

would have been to the defendants' advantage; and (2) the expanded definition of voluntary manslaughter from sudden quarrel or heat of passion was an unforeseeable enlargement of the crime. We disagree.

First, we disagree with appellant's premise that application of the expanded definition of voluntary manslaughter worked to his disadvantage. The cases prior to *Lasko* had not held that an unintentional killing, committed in the heat of passion, was involuntary manslaughter. In the single case appellant cites in which the court actually held, in a situation of provocation, that voluntary manslaughter required actual intent to kill—*People v. Shannon*, *supra*, 46 Cal.App.4th 1365—the court affirmed a conviction of murder as the alternative. Involuntary manslaughter was not discussed. This distinguishes homicide committed under provocation from homicide committed in imperfect self-defense where the courts, prior to *Lasko* and *Blakeley*, had indeed held that a manslaughter committed without intent to kill was involuntary manslaughter. (See *Blakeley*, *supra*, 23 Cal.4th at pp. 90–91, citing *People v. Welch* (1982) 137 Cal.App.3d 834 [187 Cal.Rptr. 511], *People v. Glenn* (1991) 229 Cal.App.3d 1461 [280 Cal.Rptr. 609], and *People v. Ceja* (1994) 26 Cal.App.4th 78 [31 Cal.Rptr.2d 475].)

Second, we question whether the *Lasko* ruling was indeed unforeseeable. As noted in the *Lasko* opinion, its ruling was in line with the analysis of various legal scholars and with the "common law as well as the statutory law in most states." (*Lasko*, *supra*, 23 Cal.4th at p. 110.) We agree with *Crowe* and *Johnson* that *Lasko* did not establish a new rule of law, but clarified the statutory definition of voluntary manslaughter contained in section 192, subdivision (a). That statute does not provide that intent to kill is an element of voluntary manslaughter in the context of a sudden quarrel or heat of passion. Further, we agree with this conclusion despite the fact that California courts had, prior to *Blakeley* and *Lasko*, misconstrued section 192. As noted in *Crowe*,

"If a decision does *not* establish a new rule, 'the decision simply becomes part of the body of case law of this state, and under ordinary principles of stare decisis applies in all cases not yet final. "As a rule, judicial decisions apply 'retroactively.' [Citation.] Indeed, a legal system based on precedent has a built-in presumption of retroactivity." [Citation.]' (*People v. Guerra* (1984) 37 Cal.3d 385, 399 [208 Cal.Rptr. 162, 690 P.2d 635].)

"An example which illustrates the type of decision that does not establish a new rule of law and therefore should be applied to all cases not yet final is one that gives 'effect to a statutory rule that the courts had theretofore misconstrued . . . .' (*People v. Guerra*, *supra*, 37 Cal.3d, fn. 13 at p. 399.)" (*Crowe*, *supra*, 87 Cal.App.4th at pp. 94–95.)

Finally, we agree with *Johnson* that the differences between *Blakeley* and *Lasko*, with regard to retroactivity, require that the trial courts apply them as the Supreme Court did—that is, apply *Lasko* but not *Blakeley* retroactively. We reject appellant's contention that the way to reconcile the cases is to apply *Lasko and Blakeley* retroactively only when the defendant has been convicted of murder and thus would "have been harmed by use of the old definition of voluntary manslaughter and [would have] *benefitted* from the expanded definition of voluntary manslaughter," because we cannot know until after the jury has been instructed and a verdict has been reached which position the defendant will occupy. Obviously, the trial court must have guidance prior to rather than after the giving of the instructions.

We therefore reject appellant's assertion that the jury was misinstructed.

### 2. *Involuntary manslaughter instruction*

The jury was instructed on two theories of involuntary manslaughter: (1) that appellant was so drunk he was legally "unconscious" of his actions when he committed the offense (CALJIC No. 8.47); and (2) that appellant engaged in a lawful act in a criminally negligent manner (CALJIC Nos. 3.36, 8.51). Appellant contends the trial court committed reversible error when it failed to instruct the jury sua sponte on the lesser included offense of involuntary manslaughter based on additional theories: (1) that, if appellant lacked an intent to kill, the appropriate crime would be involuntary manslaughter; (2) that voluntary intoxication short of "unconsciousness" might have prevented appellant from forming an intent to kill, supporting an involuntary manslaughter verdict; and (3) that an unintentional killing committed during the commission of another crime could be involuntary manslaughter. Respondent disagrees, as do we.

■ "The offense of involuntary manslaughter requires proof that a human being was killed and that the killing was unlawful. [Citation.]" (*Sea Horse Ranch, Inc. v. Superior Court* (1994) 24 Cal.App.4th 446, 454 [30 Cal.Rptr.2d 681].) Involuntary manslaughter is statutorily defined as including a killing that occurs "in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection." (§ 192, subd. (b); see *People v. Lewis* (2001) 25 Cal.4th 610, 645 [106 Cal.Rptr.2d 629, 22 P.3d 392].) Involuntary manslaughter also includes an unintentional killing that occurs while the defendant is committing a misdemeanor that is dangerous under the circumstances. (*People v. Lee* (1999) 20 Cal.4th 47, 60–61 [82 Cal.Rptr.2d 625, 971 P.2d 1001].)

■ Involuntary manslaughter is a lesser included offense of murder. (*People v. Ochoa* (1998) 19 Cal.4th 353, 422 [79 Cal.Rptr.2d 408, 966 P.2d

442].) A trial court must instruct sua sponte on lesser included offenses " 'when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged. [Citations.]' " (*People v. Breverman* (1998) 19 Cal.4th 142, 154 [77 Cal.Rptr.2d 870, 960 P.2d 1094].) An error in instructing on lesser included offenses requires reversal only if the entire record establishes a reasonable probability that the error affected the outcome. (*Id.* at p. 165.)

We find no error in this case. Appellant's first two arguments—that if he lacked an intent to kill the appropriate crime would be involuntary manslaughter, and that voluntary intoxication short of unconsciousness might have precluded him from forming the intent to kill—are in essence a repetition of his earlier argument that voluntary manslaughter instructions should have included the necessary element of intent to kill. We have rejected that argument above. Nothing in any of the cases appellant cites in support of this rehashed argument changes our mind.

We further disagree with appellant's argument that the jury should have been instructed that an unintentional killing during the commission of "another crime" constitutes involuntary manslaughter. If this homicide occurred during the commission of another criminal offense, that offense was a felony, not the misdemeanor required under this theory. (*People v. Lee, supra,* 20 Cal.4th at pp. 60–61.) The undisputed evidence showed that Ms. Lombera's injuries were inflicted by the use of great, violent force. Her head was hit with a portable radio and possibly a chair as well. Her injuries included a compound fracture to her jaw, four teeth being knocked out, and 12 to 15 distinct head wounds. Infliction of these injuries did not involve a simple misdemeanor battery, as appellant seems to contend, but an aggravated felony assault with a deadly weapon or by means of force likely to produce great bodily injury. (See § 245, subd. (a).)

Appellant suggests no other theory that, under the law and the evidence, called for additional instruction on involuntary manslaughter. We reject appellant's contention that the instructions given were insufficient.

3.–5.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante,* page 1603.

## DISPOSITION

Appellant's conviction is affirmed, as is his sentence except to the extent it includes imposition (and stay) of a fine pursuant to section 1202.45. The trial court is directed to amend the abstract of judgment to delete said fine and to forward a copy of the amended abstract to the Department of Corrections.

Harris, Acting P. J., concurred.

**WISEMAN, J.,** Concurring and Dissenting.—[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

On May 25, 2005, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied July 20, 2005. George, C. J., and Baxter, J., did not participate therein.

---

[*]See footnote, *ante,* page 1603.