Filed 5/24/22; Opinion following transfer from Supreme Court
**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| THE PEOPLE, | B305714 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA013892) |
| v. | |
| DARRELL WHITSON, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Kelvin D. Filer, Judge. Affirmed in part, reversed and remanded in part.

Boyce & Schaefer and Robert E. Boyce, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Michael Katz, Idan Ivri and Yun K. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In the early 1990's, defendant and appellant Darrell Whitson was convicted of first degree murder, three counts of willful, premeditated, and deliberate attempted murder, and conspiracy to murder, in a drive-by shooting case. Whitson petitioned for resentencing as to all five counts pursuant to Senate Bill No. 1437 (Senate Bill 1437) and Penal Code section 1170.95,[1] which provided for vacatur of a murder conviction obtained under the natural and probable consequences doctrine or the felony murder theory of liability, if the defendant was not the actual killer, did not intend to kill, and was not a major participant in an underlying felony who acted with reckless disregard for human life. (*People v. Martinez* (2019) 31 Cal.App.5th 719, 723.) He appealed the trial court's postjudgment order denying that petition.

On appeal, we affirmed with respect to the conspiracy to murder and attempted murder convictions, but reversed and remanded with respect to the murder conviction.

The Supreme Court granted Whitson's petition for review. (S268189, May 26, 2021.) On January 10, 2022, the Supreme Court transferred the matter back to this court with directions to vacate our decision and reconsider the case in light of Senate Bill No. 775. (Stats. 2021, ch. 551, § 2) (Senate Bill 775).

We vacated our March 4, 2021 opinion, and now issue this revised opinion addressing all of Whitson's arguments, including his new arguments that Senate Bill 775 extends section 1170.95 relief to persons convicted of attempted murder and conspiracy to murder.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

# FACTS AND PROCEDURAL HISTORY[2]

### *The Crimes*

On July 7, 1991, Whitson was driving a blue Jeep. Fifteen-year-old Vernon Cox, who testified for the prosecution at trial under a grant of immunity, was in the passenger seat. Whitson met codefendant Shon Ramone Yokely.[3] The two were members of a Crips gang, a rival to the Bloods gang to which one of the victims, Albert Jones, belonged. (*Yokely*, *supra*, B074241 [nonpub. opn.].) Whitson told Yokely he was going to drive around looking for Bloods and invited him to come along. Yokely agreed, but first ran into a nearby residence. When he returned there was something in his waistband. (*Ibid.*) Whitson drove into Bloods territory, and slowed in front of a residence where Albert, his brother Paul, his sister Katie, and Katie's daughter Mitchshale were standing. (*Ibid.*) Yokely, who was sitting in the back seat on the driver's side, opened fire on the family. He shot Albert in the shoulder and ear, Katie in the leg, Paul in the leg, and 14-month-old Mitchshale in the head, killing her. The Jeep sped away. (*Ibid.*)

---

[2] Whitson and Yokely were tried together, and their cases were part of the same appeal. We take judicial notice of this court's prior unpublished opinion in *People v. Yokely et al.* (Jan. 17, 1995, B074241 (*Yokely*)), from which the facts are drawn. The opinion spells codefendant's name "Yokely" in the caption but "Yokley" in the body of the opinion.

[3] Cox was intoxicated and had been vomiting just before the shooting.

"Whitson was confirmed as the driver of the Jeep on that day by several other witnesses. He was also linked to the car by the presence of a .25-caliber bullet, which could have been fired from the .25-caliber automatic he possessed on the date of his arrest. Whitson also admitted to being the driver, although he attempted to exculpate himself from the shootings." (*Yokely*, *supra*, B074241 [nonpub. opn.].)

***The Trial***

As relevant here, the jury was instructed regarding direct liability as an aider and abettor (CALJIC No. 3.01), aider and abettor liability for murder as natural and probable consequence of assault with a firearm (CALJIC No. 3.02), attempted premeditated murder (CALJIC No. 8.67), conspiracy to murder and overt acts, as well as liability for the natural and probable consequences of acts in furtherance of conspiracy to murder (CALJIC Nos. 6.10 & 6.11), premeditation and deliberation (CALJIC No. 8.20), and transferred intent (CALJIC No. 8.65).

The jury found Whitson guilty of first degree murder (§ 187, subd. (a) [count 1]), three counts of willful, premeditated, and deliberate attempted murder (§§ 664/187 [counts 2–4]), and conspiracy to commit murder (§ 182, subd. (1) [count 5]). It further found that a principal used a firearm in commission of the crimes in counts 1 through 4, pursuant to section 12022, subdivision (a)(1). Whitson was sentenced to 25 years to life in count 1, and three consecutive life sentences with the possibility of parole in counts 2, 3, and 4. The sentence in count 5 was stayed pursuant to section 654.

4

### *Direct Appeal*

On appeal before another panel of this court, Whitson argued that there was insufficient evidence to support the finding that he was either a co-conspirator or an aider and abettor of the shooting (*Yokely*, *supra*, B074241 [nonpub. opn.]), that certain weapon evidence was erroneously admitted, and that the trial court erred in imposing firearm enhancements under sections 12022.5 and 12022.55 (*ibid*.).  With respect to Whitson's contention that the evidence was insufficient to support his convictions, the appellate court concluded "[t]he evidence in this case was not only substantial; it was overwhelming." (*Ibid*.)  The court reduced Whitson's presentence credit, but otherwise affirmed the judgment.  (*Ibid*.)

### *Petition for Resentencing*

On March 26, 2019, Whitson filed a petition for resentencing under section 1170.95.  He utilized a standardized form, and indicated that he was not the killer, did not act with intent to kill, and was not a major participant in the underlying felony who acted with reckless indifference to human life.  He did not check the box indicating that he was convicted of second degree murder under the natural and probable consequences doctrine.  Whitson requested that counsel be appointed to him.

The People filed a response on September 20, 2019, contending that Senate Bill 1437 was unconstitutional, but that, even if the court were to find the legislation constitutional, Whitson was ineligible for relief because:  (1) in finding Whitson guilty of conspiracy to commit murder the jury necessarily found

that he harbored an intent to kill; (2) in finding Whitson guilty of the three attempted murders the jury necessarily found that he harbored an intent to kill; and (3) the jury's findings that Whitson intended to kill the three attempted murder victims transferred to the murder victim.

Whitson's appointed counsel filed a reply pursuant to section 1170.95 on February 20, 2020, arguing for vacatur of his convictions for murder, attempted murder, and conspiracy to murder. The reply argued that: (1) the People's constitutional arguments were "highly disfavored" and without merit, (2) the People failed to present facts to rebut the presumption that Whitson was eligible for relief, (3) Senate Bill 1437 eliminated aider and abettor liability for murder under the natural and probable consequences doctrine, and (4) attempted murder requires independent proof of an aider and abettor's specific intent to kill, which the jury did not find in this case.

On March 4, 2020, the trial court denied the petition after reviewing the pleadings, a "dummy file" created by the clerk's office in chambers, and "numerous writs and motions . . . unrelated to the issues" that codefendant Yokely had filed. The court did not issue an order to show cause or hold a hearing.

The court ruled that Whitson failed to establish a prima facie basis for relief, and denied the petition as a matter of law, stating:

"The case reflected a classic drive-by shooting that was a particularly vogue activity for gangs at that time. Petitioner was a very active gang member with the 118th Street East Coast Crips. The Crips were a bitter rival of the Blood Gangs. Petitioner was the driver of the vehicle and stopped his car to tell Yokely, the shooter, that they were on their way to roll around to

6

see some Bloods. Yokely said he wanted to come along. Yokely went to a house. Petitioner waited for Yokely. And when he returned to the car, he, Yokely, was holding something in his waistband. The clear and reasonable inference from these circumstances is that Yokely was carrying a gun, and they were going to drive around hunting for Blood gang members to shoot. This was more than mere involvement in the shooting.

"Petitioner was literally the driver of this expedition. Petitioner came up with the idea. His driving pattern was very deliberate. He went to the rival gang's territory and slowed down the vehicle so Yokely could shoot. Then he drove off to flee the scene of the shooting.

"Furthermore respondent's point is well taken that we should respect the fact-finding of the jury. Petitioner was also convicted of three counts of attempted murder, again reflecting their finding that he had the specific intent to kill.

"In short, petitioner was clearly a major participant in the killing and acted with reckless indifference to human life."

### *Appeal from the Trial Court's Order Denying Resentencing*

On appeal from the trial court's order denying resentencing, Whitson contended that because the jury was instructed on a natural and probable consequences theory of liability in all five counts, and could have found him guilty on that theory, the trial court erred in finding Whitson was prima facie ineligible for relief as matter of law.

At the time of Whitson's appeal, the courts did not interpret section 1170.95 to apply to attempted murder or conspiracy to murder convictions. We therefore affirmed the trial court's order

7

denying the petition with respect to the convictions for attempted murder (counts 2, 3, and 4), and for conspiracy to murder (count 5). We reversed and remanded with respect to the murder conviction in count 1, for the reasons we discuss *post*.

The Supreme Court granted Whitson's petition for review but deferred briefing pending consideration and disposition of *People v. Lopez*, S258175, Nov. 13, 2019, or further order of the court.

On January 10, 2022, the Supreme Court transferred the matter back to this court with directions to vacate our decision and reconsider the case in light of Senate Bill No. 775. We vacated our opinion as ordered.

## DISCUSSION

In his supplemental briefing, Whitson contends that the trial court erred by summarily denying his petition because the record establishes that the jury was instructed on the natural and probable consequences theory of liability for murder and attempted murder. He further contends that his conviction for conspiracy to commit murder is an "other theory under which malice is imputed," such that he is eligible for vacatur and resentencing of the conspiracy conviction as well. Whitson asserts that the trial court was required to issue an order to show cause, conduct a hearing, and allow the parties to present evidence under section 1170.95, subdivision (c).[4]

---

[4] Whitson also argues that the trial court erred by engaging in fact-finding and relying on *Yokely's* filings. We need not address these arguments, however, given that we remand for further proceedings regarding the convictions for murder and

8

The People oppose reversal of the trial court's order with respect to the murder and conspiracy to murder convictions, but concede that reversal is appropriate with respect to the attempted murder convictions.

We reverse and remand for the trial court to conduct further proceedings with respect to the murder and attempted murder convictions, but affirm the trial court's denial of Whitson's section 1170.95 petition with respect to the conspiracy to murder conviction.

### *Legal Principles*

Through section 1170.95, Senate Bill 1437 created a petitioning process by which a defendant convicted of murder under a felony murder or natural and probable consequences theory of liability could petition to have his or her conviction vacated and be resentenced.  (§ 1170.95, subd. (a).)

As relevant here, Senate Bill 775 amended section 1170.95 to clarify that "persons who were convicted of attempted murder . . . under . . . the natural and probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theor[y]."  (Stats. 2021, ch. 551, § 1, subd. (a).)  The parties assume, without discussion, that the amendments to section 775 with respect to attempted murder apply to Whitson.  We agree that the legislation applies with respect to attempted murder as a clarification of law.[5]  (*Western*

_____

attempted murder, and we affirm the denial of relief on the conspiracy conviction as a matter of law.

9

*Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 243; *People v. Lee* (2018) 24 Cal.App.5th 50, 57).

Pursuant to section 1170.95, a petitioner must submit a declaration stating that he meets the requirements of the statute as set forth in subdivision (a), including that "(1) [a] complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine[,] (2) [t]he petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder[, and] (3) [t]he petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a).)

If the petition is facially sufficient and the petitioner has requested that counsel be appointed, the trial court appoints counsel. (§ 1170.95, subd. (b)(3).) "Within 60 days after service of a petition that meets the requirements set forth in subdivision (b), the prosecutor shall file and serve a response. The petitioner may file and serve a reply within 30 days after the prosecutor's response is served. . . . After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is

---

[5] The amendments make no other changes that affect our resolution of the issues.

entitled to relief, the court shall issue an order to show cause.  If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so." (§ 1170.95, subd. (c).)

### *Murder Conviction*

With respect to Whitson's murder conviction, the People argue that the petition fails as a matter of law because the jury found him guilty of conspiracy to murder, which required that it first find that Whitson intended to kill.  Whitson could therefore still be convicted of murder after the amendments to sections 188 and 189, and is ineligible for relief.[6]

---

[6] In the respondent's brief, the People argued that the three attempted murder convictions required the jury to find that Whitson harbored the specific intent to kill Albert, Paul, and Katie, because the instruction regarding liability for a crime as a natural and probable consequence of assault with a firearm was expressly limited to the murder count.  The People reasoned that, because the jury was properly instructed regarding transferred intent under CALJIC No. 8.65 that "[w]hen one attempts to kill a certain person, but by mistake or inadvertence kills a different person, the crime, if any, so committed is the same as though the person originally intended to be killed, had been killed," the jury would have, by necessity, found that the intent to kill the three other victims had been transferred to Mitchshale, and Whitson could still be found guilty under the amendments to sections 188 and 189.  The People abandoned this argument in supplemental briefing by conceding that the jury was not instructed that Whitson was required to possess the intent to kill to be guilty of attempted premeditated murder.

11

"[C]onspiracy is a specific intent crime requiring an intent to agree or conspire, and a further intent to commit the target crime, here murder, the object of the conspiracy." (*People v. Swain* (1996) 12 Cal.4th 593, 602.) In this case however, the jury was not instructed that, in addition to finding Whitson intended to agree to conspire to commit murder, it must also find he intended to commit murder.[7]

---

[7] As relevant here, a modified version of CALJIC No. 6.10 was given that deleted a phrase from the form instruction that states, "and with the further specific intent to commit that crime." (CALJIC No. 6.10.) The instruction given by the trial court is set forth below, with our insertion of the marker "*[***]*" to show where the phrase deleted by the trial court would typically be included in the form instruction:

"A conspiracy is an agreement entered into between two or more persons with the specific intent to agree to commit the public offense of murder *[***]* followed by an overt act committed in this state by one [or more] of the parties for the purpose of accomplishing the object of the agreement. Conspiracy is a crime.

"In order to find a defendant guilty of conspiracy, in addition to proof of the unlawful agreement and specific intent, there must be proof of the commission of at least one of the overt acts alleged in the [information]. It is not necessary to the guilt of any particular defendant that defendant personally committed the overt act, if [he] was one of the conspirators when such an act was committed.

"The term 'overt act' means any step taken or act committed by one [or more] of the conspirators which goes beyond mere planning or agreement to commit a public offense and which step or act is done in furtherance of the accomplishment of the object of the conspiracy.

"To be an 'overt act', the step taken or act committed need not, in and of itself, constitute the crime or even an attempt to commit the crime which is the ultimate object of the conspiracy.

Had the jury been fully instructed with respect to conspiracy to murder, including the portion of the form instruction deleted, its guilty verdict would have encompassed the finding that Whitson intended to kill. (See *People v. Medrano* (2021) 68 Cal.App.5th 177, 182–184, 186 (*Medrano*).) That finding would have precluded relief for the murder conviction, as Whitson could still be convicted under section 188, following the amendments effected by Senate Bill 1437. (See § 188, subd. (a)(1) [imposing liability for murder "when there is manifested a

---

Nor is it required that such a step or act, in and of itself, be a criminal or an unlawful act."

The trial court also instructed the jury under CALJIC No. 6.11:

"Each member of a criminal conspiracy is liable for each act and bound by each declaration of every other member of the conspiracy if such act or such declaration is in furtherance of the object of the conspiracy.

"The act of one conspirator pursuant to or in furtherance of the common design of the conspiracy is the act of all conspirators.

"A member of a conspiracy is not only guilty of the particular crime that to [his] knowledge [his] confederates agreed to and did commit, but is also liable for the natural and probable consequences of any [crime] [act] of a co-conspirator to further the object of the conspiracy, even though such [crime] [act] was not intended as a part of the agreed upon objective and even though [he] was not present at the time of the commission of such [crime] [act].

"You must determine whether the defendant is guilty as a member of a conspiracy to commit the originally agreed upon crime or crimes, and, if so, whether the crime alleged [in Count[s] one, two, three & four] was perpetuated by [a] coconspirator[s] in furtherance of such conspiracy and was a natural and probable consequence of the agreed upon criminal objective of such conspiracy."

13

deliberate intention to unlawfully take away the life of a fellow creature"].) However, for reasons unknown to us, the trial court struck the language in the pattern instruction for CALJIC No. 6.10 that would have instructed the jury that it was required to find that Whitson intended to commit murder.[8]

We are not otherwise persuaded by the People's argument that the jury's true finding against Whitson on overt act 5—charging that "[o]n or about July 7, 1991, the defendants and others shot and killed 14 month old Mitchshalae [*sic*] Davis"—constitutes a jury finding that Whitson intended to kill the victim. The jury was instructed that an overt act is any step taken beyond mere agreement and planning toward committing murder. Significantly, it was further instructed that, "[t]o be an 'overt act', the step taken or act committed need not, in and of itself, constitute the crime or even an attempt to commit the crime which is the ultimate object of the conspiracy." Nothing in these instructions suggests the jury's true finding equates to a finding that Whitson possessed the intent to murder. Absent an express finding by the jury of intent to commit murder, Whitson is not barred from relief on that basis as a matter of law.[9]

---

[8] The reporter's transcript is not included in the record on appeal, so we cannot ascertain why the trial court modified CALJIC No. 6.10.

[9] We reject Whitson's argument that Mitchshale, or any other individual, had to be named as the individual who the defendants intended to kill when they conspired. We agree with the Ninth Circuit that, under California law, conspiracy to commit murder may be based on an agreement to kill "'a human being'" who is not specifically identified. (*United States v. Wicker* (9th Cir. 2005) 151 Fed.Appx. 563, 565.)

14

### Attempted Murder Convictions

We agree with the parties that the matter must be reversed and remanded with respect to the attempted murder convictions as well. Section 1170.95 has been amended to clarify that it applies to convictions for attempted murder under a natural and probable consequences theory of liability. (Stats. 2021, ch. 551, § 1, subd. (a); § 1170.95, subd. (a).) Although Whitson was convicted of three counts of premeditated attempted murder, the jury was instructed in pertinent part: "To constitute willful, deliberate, and premeditated attempt to commit murder, the would-be slayer must weigh and consider the question of killing and the reasons for and against such a choice and, having in mind the consequences, decides [*sic*] to kill and makes [*sic*] a direct but ineffectual act to kill another human being." (CALJIC No. 8.67) Based on this language, and in particular the possibility that the jury considered Yokely, and not Whitson to be the would-be slayer, we cannot conclude as a matter of law that the jury found Whitson himself harbored the intent to kill. We therefore reverse the attempted premeditated murder convictions and remand to the trial court for further proceedings.

### Conspiracy to Murder Conviction

As we have discussed, the trial court's deletion of the phrase "and with the further specific intent to commit [murder]" from the jury instruction on conspiracy to murder precludes a finding that Whitson is ineligible for section 1170.95 relief as a matter of law with respect to his murder and attempted murder convictions. The omission of the language regarding specific

15

intent informs our decision regarding whether Whitson can be found prima facie ineligible for relief for those convictions because it demonstrates an important limitation on what we know about the jury's findings in reaching its verdicts. The court's modification of the standard instruction, however, does not bring Whitson's conspiracy to murder conviction within the rubric of section 1170.95. While the omission of the element of intent to kill might have provided a basis to claim trial error in connection with the conviction for conspiracy, that was an issue to be addressed on direct appeal. But the adequacy of the particular instructions on conspiracy in this case is not relevant to the predicate question presented in connection with Whitson's conspiracy conviction: whether section 1170.95 permits a petitioner to seek to vacate a conspiracy conviction at all.

We reject Whitson's assertion that section 1170.95 provides a mechanism for challenging a conviction for conspiracy to murder. Our conclusion is based on an interpretation of the statute and, as explained more fully below, neither the words of section 1170.95 nor the Legislature's stated purpose support the view that the statute applies to a conspiracy to murder conviction.

"'We conduct a de novo review of questions of statutory interpretation. [Citation.] The fundamental task of statutory interpretation is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.] "We begin with the statute's text, assigning the relevant terms their ordinary meaning, while also taking account of any related provisions and the overall structure of the statutory scheme. [Citation.] Essential is whether our interpretation, as well as the consequences flowing therefrom, advances the Legislature's

16

intended purpose. [Citation.]" [Citation.]' [Citation.]" (*People v. Santos* (2020) 53 Cal.App.5th 467, 473.)

The plain language of section 1170.95 does not indicate that it applies to convictions for conspiracy to murder. Conspiracy to murder is not mentioned in the statute. This is particularly significant because the Legislature promulgated Senate Bill 775 in part to amend section 1170.95 to expressly include convictions for attempted murder and manslaughter in the list of crimes subject to petition. Those crimes had not been identified in the original statute. (See Stats. 2020, ch. 551, § 1, subd. (a) ["The Legislature finds and declares that this legislation . . . [¶] . . . [c]larifies that persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories"].) At the time it added this language, the Legislature had the opportunity to extend section 1170.95 relief to conspiracy to murder convictions alongside attempted murder and manslaughter convictions, but did not. The language of section 1170.95 is unambiguous. The statute does not permit a challenge to a conviction for conspiracy to murder.

While we need not go beyond the express, unambiguous language of the statute, the omission of convictions for conspiracy to murder is consistent with the Legislature's purpose in enacting Senate Bills 1437 and 775—to ensure, with certain exceptions related to felony murder that "a conviction for murder requires that a person act with malice aforethought[,]" and that "culpability for murder [is] premised upon that person's own actions and subjective mens rea." (Stats. 2018, ch. 1015, § 1, subd. (g).) Senate Bill 1437 added section 1170.95 to the Penal

17

Code to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (c).) Senate Bill 1437 also amended sections 188 and 189—which relate to natural and probable consequences murder and felony murder, respectively—to accomplish this goal. Subsequently, Senate Bill 775 was promulgated, in part, to amend section 1170.95 to clarify that it provides relief for certain attempted murder and manslaughter convictions. (Stats. 2020, ch. 551, § 1, subd. (a).) Both bills left section 187, which defines murder as "the unlawful killing of a human being, or a fetus, with malice aforethought" unchanged. (§ 187, subd. (a).) The legislation also left unchanged section 182, which sets the penalty for conspiracy to commit murder as "that prescribed for murder in the first degree."

Nothing in the legislative history of either Senate Bill 1437 or Senate Bill 775 evinces a legislative intent to lessen the penalty for conspiracy to murder under any circumstance. This is presumably because the crime as defined in the Penal Code is based on the conspirator defendant's own subjective *mens rea*: conspiracy to murder requires that a defendant either act with malice or intend to kill.[10] (*Medrano*, *supra*, 68 Cal.App.5th at pp.

_____

[10] Manslaughter is defined as "the unlawful killing of a human being without malice." (§ 192, subd. (a).) A conviction of voluntary manslaughter does not require a finding of intent to kill. (See *People v. Parras* (2007) 152 Cal.App.4th 219, 224

182–183 ["[A] conviction of conspiracy to commit murder requires a finding of intent to kill. [A]ll conspiracy to commit murder is necessarily conspiracy to commit premeditated and deliberated first degree murder."].) A jury's finding that a defendant is guilty of conspiracy to murder, when a murder has in fact been committed, is "in effect [a finding] that [the defendant] was a direct aider and abettor of the killings." (*Id.* at p. 183.) "'Senate Bill 1437 does not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought.'" (*Ibid.,* quoting *People v. Gentile* (2020) 10 Cal.5th 830, 848.) In light of the foregoing, we conclude that the Legislature did not intend to provide relief from convictions for conspiracy to murder through the filing of a petition under section 1170.95.

Finally, Whitson argues that his conspiracy to murder conviction fits within the meaning of the following phrase in section 1170.95: "other theory under which malice is imputed." (Section 1170.95, subd. (a).) This is wholly beside the point with respect to Whitson's challenge to the conspiracy to murder conviction itself. A theory imputing malice is relevant only to vacating a conviction for one of the statute's specified crimes, which do not include convictions for conspiracy. Rather, such a theory of imputed malice provides a basis only to challenge Whitson's convictions for murder and attempted murder, which we permit under the unique circumstances of this case.

---

["voluntary manslaughter may . . . occur when one kills with a conscious disregard for life but no intent to kill"].)

19

## DISPOSITION

The trial court's order denying Whitson's resentencing petition is affirmed as to his conviction for conspiracy to murder in count 5.  As to the murder conviction in count 1 and the attempted murder convictions in counts 2 through 4, we reverse and remand to the trial court for further proceedings.


MOOR, J.

We concur:



RUBIN, P. J.



KIM, J.

20