[Crim. No. 41512. Second Dist., Div. Five. Nov. 18, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES ALVIN WELCH, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Cynthia Choy Ong, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Paul C. Ament and Susan D. Martnyec, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**FEINERMAN, P. J.**—Defendant, James Alvin Welch, was charged with murder (Pen. Code, § 187) and use of a firearm in the commission of the offense (Pen. Code, §§ 12022.5, 1203.06, subd. (a)(1)). His first jury trial ended in a mistrial. After a second jury trial, he was convicted of voluntary manslaughter (Pen. Code, § 192, subd. 1), a lesser and necessarily included offense of the murder charge. Defendant was also found guilty of the charge of using a firearm in the commission of the offense. He was sentenced to four years in state prison.

Defendant appeals on three grounds: First, he asserts that his plea of once in jeopardy at the beginning of the second trial should have been granted, since no

juror in his first trial had favored his conviction on the murder charge, in effect acquitting him of that charge. Second, he contends that the trial court's refusal to instruct on involuntary manslaughter was prejudicial error. Third, he argues that two of the court's instructions were erroneous because they were not supported by the evidence. These instructions were CALJIC No. 8.20 (1979 rev.) regarding first degree murder and CALJIC No. 5.55, which states that the right of self-defense is not available to one who seeks a quarrel with the intent to create a real or apparent necessity of exercising self-defense.

We hold that defendant was put in jeopardy twice under the holding of *Stone* v. *Superior Court* (1982) 31 Cal.3d 503 [183 Cal.Rptr. 647, 646 P.2d 809], but that the *Stone* decision is to be applied prospectively and therefore does not apply to defendant whose trial occurred before *Stone* was decided. We further hold that defendant's request for an instruction on involuntary manslaughter should have been granted, and that failure to give that instruction constituted prejudicial error. For that reason we reverse and remand the case to the trial court with instructions to give defendant a new trial on the voluntary manslaughter charge.

FACTS

Defendant and the victim, Willie Burnett (Burnett), were customers of Roy's Rib Inn, a bar and restaurant in Compton, on the evening of May 3, 1980. The defendant walks with a cane and is classified as disabled. His right foot was crushed several years before this incident when a forklift he was driving turned over. As a result of that accident, he developed thrombophlebitis, a condition in which inflammation and blood clots are present in a vein. The condition can be life threatening, should a clot break away, travel through the blood stream, and lodge in the lung. To control the condition, defendant uses Coumadin, a medication which prevents his blood from clotting. He is a bleeder—any physical trauma can cause severe injury and possible death.

The defendant was playing pool with a couple of his friends when Burnett entered the bar at 9:30 p.m. Burnett was a stranger to defendant. As soon as he came in, Burnett began arguing with defendant and his friends. Burnett told defendant he "would kick his ass." Defendant said there was "no need to fight, he couldn't fight." Burnett responded that "he was going to kick his ass anyway."

Shortly thereafter, defendant and Burnett were seated in adjoining booths and Burnett started threatening defendant again. He said he would take the defendant outside and "kick his ass." When the defendant said, "You're not going to do anything to me," Burnett rushed at the defendant. Some of Burnett's friends tried to restrain him, but he broke away and charged at the defendant. Defen-

dant reached for a gun that was strapped to his leg and told Burnett to "stop" and "stay back," but Burnett kept coming at him. Defendant testified that he shot Burnett to "stop" the attack and because he was afraid that Burnett would kill him. The defendant stated that he was thinking about his physical condition when he pulled the trigger and believed that his life was threatened and he had to stop Burnett. The defendant further testified that he just raised the gun and fired, that he did not point the gun, and that his sole intention was to "stop" Burnett.

There is no evidence indicating that the victim was armed with any weapon when he advanced on the defendant. However, Burnett was taller, heavier and younger than the defendant. The autopsy report indicated that Burnett's blood alcohol level was .14 percent.

Nancy Darlene Williams, a bartender at Rob's Rib Inn, testified that Burnett came in with someone else and seemed to argue with some other people. She stated that Burnett stood up and moved toward defendant in what seemed to be a threatening manner prior to being shot by defendant. She testified that this all happened very quickly.

Jose Rivera testified to an earlier incident involving the victim. On July 9, 1978, at 4 o'clock in the morning, he and a friend were attacked on the street by three men whom they did not know. Frank Terkelsen, a deputy sheriff, arrested two of these men. One of these individuals was Willie Burnett.

### The Once in Jeopardy Plea

■ Defendant's first trial for murder ended with the jury deadlocked, eight for conviction of voluntary manslaughter and four for acquittal. No juror had voted to convict defendant of murder. He contends that his retrial for murder placed him in jeopardy twice, since the jury by implication acquitted him of murder in the first trial. Defendant's position was adopted by the California Supreme Court in *Stone* v. *Superior Court, supra,* 31 Cal.3d 503, decided after the close of defendant's trial. *Stone* held that "in all cases in which the jury has not yet begun deliberations as of the date this decision becomes final, the trial court is constitutionally obligated to afford the jury an opportunity to render a partial verdict of acquittal on a greater offense when the jury is deadlocked only on an uncharged lesser included offense." (*Id.,* at p. 519.) *Stone* was specifically made nonretroactive to cases already deliberated upon by a jury.

Defendant urges that this nonretroactivity ignores the teaching of the United States Supreme Court in *Linkletter* v. *Walker* (1965) 381 U.S. 618, 627 [14 L.Ed.2d 601, 607, 85 S.Ct. 1731]. *Linkletter,* in discussing whether the holding of *Mapp* v. *Ohio* (1961) 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684,

84 A.L.R.3d 933] should be retroactively applied to cases which had already become final in a state court, noted in dicta that "[u]nder our cases it appears . . . that a change in law will be given effect while a case is on direct review, [citation] . . . ."

Seven years later, the United States Supreme Court reviewed a conviction on direct appeal from the District Court for the Southern District of New York and gave *prospective application only* to *Katz* v. *United States* (1967) 389 U.S. 347 [19 L.Ed.2d 576, 88 S.Ct. 507]. (*Desist* v. *United States* (1969) 394 U.S. 244 [22 L.Ed.2d 248, 89 S.Ct. 1030].) In referring to those cases which, like *Desist,* were pending on review when *Katz* was decided, the court noted that in *Johnson* v. *New Jersey* (1966) 384 U.S. 719 [16 L.Ed.2d 882, 86 S.Ct. 1772] it had abandoned the approach of *Linkletter* "and concluded that 'there are no jurisprudential or constitutional obstacles' to the adoption of a different cut-off point." (*Desist, supra,* 394 U.S. at p. 252 [22 L.Ed.2d at p. 257].)

*Did the Trial Court Err in Failing to Instruct the Jury on Involuntary Manslaughter?*

█ In criminal cases the trail court must instruct on the general principles of law relevant to the issues raised by the evidence. That obligation has been held to include giving instructions on lesser included offenses "when the evidence raises a question as to whether all of the elements of the charged offense were present [citations], but not when there is no evidence that the offense was less than that charged." (*People* v. *Wickersham* (1982) 32 Cal.3d 307, 323-324 [185 Cal.Rptr. 436, 650 P.2d 311].) In *People* v. *Flannel* (1979) 25 Cal.3d 668, 684-685, footnote 12 [160 Cal.Rptr. 84, 603 P.2d 1], earlier cases requiring jury instructions to be given when *any* evidence is presented, no matter how weak, were disapproved, and a new rule adopted requiring a trial court to instruct on necessarily included offenses only if the accused proffers evidence sufficient to "deserve consideration by the jury, i.e., 'evidence from which a jury composed of reasonable men could have concluded' " that the particular facts underlying the instruction did exist. (*People* v. *Flannel, supra,* at p. 684, quoting from *People* v. *Carr* (1972) 8 Cal.3d 287, 294 [104 Cal.Rptr. 705, 502 P.2d 513].) Once there is sufficient evidence to warrant this conclusion, the trial court is obligated to instruct on the theory.

█ Manslaughter is the unlawful killing of a human being without malice. (Pen. Code, § 192.) Manslaughter is involuntary "in the commission of an unlawful act, not amounting to felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection;" (excluding acts committed while driving a vehicle). The basic distinction in California law between voluntary and involuntary manslaughter is that voluntary manslaughter requires an intent to kill whereas involuntary

manslaughter does not. We must decide whether the jury in the instant case could reasonably find that the defendant did not have the intent to kill when he shot Burnett.

▆ In the instant case there is substantial evidence from which a jury could conclude that the defendant did not intend to kill Burnett when he discharged his weapon. The evidence was uncontradicted that Burnett was the aggressor at all times prior to being shot by the defendant. Defendant testified that he did not point the gun and that he just raised the gun and fired to "stop" Burnett. The defendant stated that he was afraid that Burnett would cause his death by "beating up" on him and knocking him down. The jury could reasonably believe that defendant's actions were taken in self-defense compelled by fear of great bodily harm or death. ▆ ▆▆▆ If such were the case, a conviction for involuntary manslaughter would be appropriate where the jury finds that the nature of the attack did not justify the resort to deadly force in self-defense or that the force used in self-defense exeeded that which was reasonably necessary to repel the attack. (*People* v. *Clark* (1982) 130 Cal.App. 3d 371, 380-382 [181 Cal.Rptr. 682]; *People* v. *Young* (1963) 214 Cal.App.2d 641, 646 [29 Cal.Rptr. 595].)[1]

▆ A defendant has a constitutional right to have the jury determine every material issue presented by the evidence. An erroneous failure to instruct on a lesser included offense constitutes a denial of that right. "[S]uch error cannot be cured by weighing the evidence and finding it not reasonably probable that a correctly instructed jury would have convicted the defendant of the lesser included offense." (*People* v. *Sedeno* (1974) 10 Cal.3d 703, at p. 720 [112 Cal.Rptr. 1, 518 P.2d 913].) However, the Supreme Court held in *Sedeno* that "in some circumstances it is possible to determine that although an instruction on a lesser included offense was erroneously omitted, the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions. In such cases the issue should not be deemed to have been removed from the jury's consideration since

---

[1]The doctrine of necessity as applied to the affirmative defense of "self-defense" is explained in *People* v. *Clark, supra,* 130 Cal.App.3d 371 at page 380 as follows: "The principles of self-defense are founded in the doctrine of necessity. This foundation gives rise to two closely related rules which are applicable in this case. First, only that force which is necessary to repel an attack may be used in self-defense; force which exceeds the necessity is not justified. (*People* v. *Moody* (1943) 62 Cal.App.2d 18, 22 [143 P.2d 978].) Second, deadly force or force likely to cause great bodily injury may be used only to repel an attack which is in itself deadly or likely to cause great bodily injury; thus '[a] misdemeanor assault must be suffered without the privilege of retaliating with deadly force.' (*People* v. *Jones, supra,* 191 Cal.App.2d at p. 482 [Cal.Rptr. 777]. See also *People* v. *Anderson* (1922) 57 Cal.App.2d 721, 727 [208 P. 204].) Under these two principles a person may be found guilty of unlawful homicide even where the evidence establishes the right of self-defense if the jury finds that the nature of the attack did not justify the resort to deadly force or that the force used exceeded that which was reasonably necessary to repel the attack. (See *People* v. *Whitfield* (1968) 259 Cal.App.2d 605, 609 [66 Cal.Rptr. 438]; *People* v. *Young, supra,* 214 Cal.App.2d at p. 646.)"

it has been resolved in another context, and there can be no prejudice to the defendant since the evidence that would support a finding that only the lesser offense was committed has been rejected by the jury." (*People* v. *Sedeno, supra,* 10 Cal.3d at p. 721 (overruled on a point not here pertinent in *People* v. *Flannel, supra,* 25 Cal.3d 668, 684, fn. 12).)

In this case no jury instruction presented the jury with the theory that an unlawful killing was committed without the intent to kill. Thus, the factual question posed by the omitted instruction—whether defendant acted unlawfully without the intent to kill—was not "necessarily resolved adversely to the defendant under other, properly given instructions." (*People* v. *Sedeno, supra,* 10 Cal.3d at p. 721.) The trial court's error in failing to instruct on involuntary manslaughter cannot be deemed to be harmless and requires a reversal of the judgment.

Since the defendant cannot be retried for murder, no useful purpose would be served by discussing his objections to the instructions given to the jury on murder.

■   Defendant also complains about the giving of CALJIC No. 5.55 which states: "The right of self-defense is not available to a person who seeks a quarrel with the intent to create a real or apparent necessity of exercising self-defense." We find no merit in this objection. Although the defendant testified that Burnett instigated the quarrel, the jury was not obligated to believe his testimony.

The judgment is reversed and remanded for retrial in accordance with the views expressed herein.

Stephens, J., and Ashby, J., concurred.