[No. B044002. Second Dist., Div. Seven. May 7, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
RAYMOND BUTLER GLENN, Defendant and Appellant.

Counsel

Maureen DeMaio, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Edward T. Fogel, Jr., Assistant Attorney General, Donald E. DeNicola and Marc E. Turchin, Deputy Attorneys General, for Plaintiff and Respondent.

Opinion

**JOHNSON, J.**—Raymond Butler Glenn appeals from a judgment after a jury verdict finding him guilty of voluntary manslaughter. Because we find the trial court erred in refusing to instruct on involuntary manslaughter we conditionally reverse the conviction.

### FACTS AND PROCEEDINGS BELOW

It is undisputed Glenn killed the victim, Thomas, with a foot-long butcher knife. The only issues presented by the evidence pertained to the form of homicide: murder or manslaughter. The defendant does not contend the homicide was justified. The jury found the defendant guilty of voluntary manslaughter based on the following evidence and instructions.

Glenn and Thomas were having breakfast together in a neighborhood restaurant when they got into an argument over a $10 bill Thomas had left on the counter to pay for their food. Witnesses testified they saw Glenn take the money and put it in his pocket. According to prosecution witnesses, Thomas became angry over the missing $10. The two men began wrestling and "tussling" in the restaurant. Glenn pulled a butcher knife about a foot long from his pants and approached Thomas, who attempted to get out of the way. As Thomas backed away, Glenn stabbed him with the knife. Thomas died from a single stab wound to the chest which penetrated four and three-fourths inches. No weapon was found on Thomas or anywhere in the restaurant. No one saw Thomas display a weapon during the argument.

Glenn testified he and Thomas were good friends. They went to the restaurant to have breakfast while they waited for the opportunity to buy

some cocaine. Thomas was armed with a handgun and Glenn with the butcher knife to protect themselves from a neighborhood gang. Glenn admitted taking the $10 from the counter. He thought it was Thomas's contribution to the cocaine they were planning to buy. He stated he was surprised when Thomas started getting angry about the money. He did not know "where [Thomas] was coming from" but thought perhaps Thomas was acting that way to conceal the drug buy from the others in the restaurant. In any event, Glenn testified, when Thomas kept on about his money Glenn threw the money down and told Thomas, "I don't want you to come to me about this no more, never in life. I don't want you to mess with me no more, you know." Glenn then started to walk out of the restaurant.

Glenn further testified he had the knife in his hand because it was too big to keep in his pants while he sat at the counter. He was trying to put the knife back in his pants as he walked toward the door. Before he got to the door he could hear Thomas coming toward him from behind and thought Thomas was going to grab him. Glenn instinctively turned around and Thomas "got stuck" with the knife. Glenn also testified he was afraid of Thomas and that when Thomas approached him he believed it was for the purpose of attacking him. He intended to stab Thomas, but not to kill him. Although his versions of how the homicide occurred differed somewhat, Glenn testified repeatedly he did not intend to kill Thomas.

The trial court instructed the jury on first and second degree murder and voluntary manslaughter. The court also instructed the jury that an honest but unreasonable belief in the need for self-defense negates malice aforethought and is a defense to murder but not voluntary manslaughter.

The trial court refused to instruct the jury on involuntary manslaughter based on its belief there was a "lack of any evidence to justify that [theory]."

The jury found Glenn guilty of voluntary manslaughter and that he used a deadly weapon in committing the crime. Glenn waived jury trial on the issue of a prior conviction and the court found the prior to be true. The court sentenced Glenn to 11 years for voluntary manslaughter plus 1 year for the use of a deadly weapon and 1 year for the prior conviction: a total of 13 years. Glenn's motion to reduce the verdict to involuntary manslaughter was denied.

Glenn's principal contention on appeal is the trial court erred in refusing to instruct the jury on involuntary manslaughter. Because we agree with this contention we find it unnecessary to address Glenn's other contentions.

DISCUSSION

## I. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN REFUSING TO INSTRUCT THE JURY ON INVOLUNTARY MANSLAUGHTER.

■ It is black letter law the trial court must instruct the jury on every theory of the case which is supported by substantial evidence. (*People* v. *Edwards* (1985) 39 Cal.3d 107, 116 [216 Cal.Rptr. 397, 702 P.2d 555]; *People* v. *Geiger* (1984) 35 Cal.3d 510, 519 [199 Cal.Rptr. 45, 674 P.2d 1303, 50 A.L.R.4th 1055]; *People* v. *Flannel* (1979) 25 Cal.3d 668, 684 [160 Cal.Rptr. 84, 603 P.2d 1].) Where the theory is the defendant committed a lesser included offense the court must instruct on the lesser included offense when there is evidence from which a jury composed of reasonable persons *could* conclude the defendant was guilty of the lesser crime. (*People* v. *Wickersham* (1982) 32 Cal.3d 307, 325 [185 Cal.Rptr. 436, 650 P.2d 311]; *People* v. *Flannel*, *supra*, 25 Cal.3d at p. 684.)

In making the determination whether to instruct on a lesser included offense the "trial court should not . . . measure the substantiality of the evidence by undertaking to weigh the credibility of witnesses, a task exclusively relegated to the jury." *People* v. *Flannel*, *supra*, 25 Cal.3d at p. 684.) " ' "[T]he fact that the evidence may not be of a character to inspire belief does not authorize the refusal of an instruction based thereon." ' " (*Ibid.*, quoting *People* v. *Carmen* (1951) 36 Cal.2d 768, 773 [228 P.2d 281].) As an obvious corollary, if the evidence is minimal and insubstantial the court need not instruct on its effect. (*Ibid.*; *People* v. *Kaurish* (1990) 52 Cal.3d 648, 696 [276 Cal.Rptr. 788, 802 P.2d 278].) Any doubts about the sufficiency of the evidence to warrant a requested instruction should be resolved in favor of the defendant. (*Flannel*, *supra*, 25 Cal.3d at p. 685.)

With these principles in mind we examine the evidence supporting involuntary manslaughter.

Involuntary manslaughter is the unintentional killing, without malice aforethought, "in the commission of an unlawful act, not amounting to felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection." (Pen. Code, § 192, subd. (b); 1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Crimes Against the Person, § 518, pp. 585-587.)

Glenn's testimony was contradictory as to how the stabbing occurred. Part of his testimony suggests the stabbing was accidental. Glenn testified he removed the knife from his waistband and placed it in his lap while he

sat at the counter. When he got up from the counter and started walking toward the door he tried, at the same time, to put the knife back in his pants. As he was walking and trying to slip the foot-long knife back into his pants he heard the victim coming up behind him. The victim appeared about to grab Glenn and, in a reflex action, Glenn turned with the knife in his hand and the knife entered the victim's chest causing a fatal wound. Glenn stated, "I didn't try to stick it. It's just that when he turned—when I turned and he is coming, and it just happened like at the same time."

Upon further questioning, however, Glenn testified he was afraid Thomas was going to attack him and he intended to stab Thomas but not to kill him.

Relying on *People* v. *Ibarra* (1982) 134 Cal.App.3d 413 [184 Cal.Rptr. 639], the People argue that although Glenn denied any intent to kill Thomas the denial was insufficient to support an instruction on involuntary manslaughter in view of Glenn's testimony he intended to stab Thomas and that he stabbed Thomas because he was afraid Thomas was going to hurt him. We find *Ibarra* distinguishable.

In *Ibarra* the defendant argued the court erred in failing to instruct sua sponte on the lesser included offense of involuntary manslaughter. The court noted, "The single piece of evidence of lack of intent Ibarra cites is his negative answer to the one question . . . about whether it was his intention to kill [the victim]." Ibarra admitted, however, he was holding the gun just three or four feet from the victim and pointing it at his chest when he pulled the trigger. (134 Cal.App.3d at p. 420.) This testimony, the court said, made his denial of intent to kill "equivocal and erase[d] any substantiality that might otherwise be attributed to his answer" in which he denied an intent to kill. (*Ibid.*) The court analogized to *People* v. *Flannel, supra,* in which the defendant argued the trial court should have instructed sua sponte on diminished capacity due to intoxication. The Supreme Court found the failure to instruct on diminished capacity was not error because the only evidence of intoxication was defendant's equivocal statement, "I was drunk, I would suppose." (25 Cal.3d at p. 686.)

We do not view *Ibarra* as holding the court may measure the substantiality of the evidence supporting an instruction by weighing the credibility of the defendant's testimony. *People* v. *Flannel,* on which the *Ibarra* court relied, specifically rejected that approach. (*People* v. *Flannel, supra,* 25 Cal.3d at p. 684; and see discussion, *ante,* at p. 1465.) Rather, the *Ibarra* court found that where the single piece of evidence supporting involuntary manslaughter is a "one line denial of intent to kill" but the defendant's own version of events together with all the other evidence only supports an

inference of intent to kill, the bare denial of intent is not substantial enough to warrant a sua sponte instruction on involuntary manslaughter.

In the case before us, Glenn testified repeatedly he did not intend to kill Thomas. Furthermore, either version of events described by Glenn is consistent with a lack of intent to kill. Under the first version the killing could be viewed either as accidental or involuntary manslaughter based on criminal negligence. Under the second version the killing could be viewed as a case of imperfect self-defense. (Cf. *People* v. *Welch* (1982) 137 Cal.App.3d 834, 840 [187 Cal.Rptr. 511].) The fact Glenn testified to different versions of how the stabbing occurred did not undercut his request for an involuntary manslaughter instruction but at most raised a credibility question to be resolved by the jury. (*People* v. *Flannel, supra*, 25 Cal.3d at p. 684.)

The trial court's error in failing to instruct on involuntary manslaughter cannot be deemed harmless. This point is so obvious the People do not even bother to make a harmless error argument on this issue. Nevertheless, we set out, briefly, our reasons for finding the error prejudicial.

A person who kills another in the honest but unreasonable belief in the necessity to defend against imminent peril to life or great bodily injury may be guilty of voluntary or involuntary manslaughter depending on the existence of an intent to kill. (*People* v. *Flannel, supra*, 25 Cal.3d at p. 674; *People* v. *Welch, supra*, 137 Cal.App.3d at p. 840.)

The necessity for instructions on lesser included offenses is founded in the defendant's constitutional right to have the jury determine every material issue presented by the evidence and on sound public policy considerations. (*People* v. *Geiger, supra*, 35 Cal.3d at pp. 519-520.) These public policy considerations were explained in *Geiger:* " 'The requirement of instructions on lesser included offenses is based on the elementary principle that the court should instruct the jury on every material question. [Citation.] The state has no interest in a defendant obtaining an acquittal where he is innocent of the primary offense charged but guilty of a necessarily included offense. Nor has the state any legitimate interest in obtaining a conviction of the offense charged where the jury entertains a reasonable doubt of guilt of the charged offense but returns a verdict of guilty of that offense solely because the jury is unwilling to acquit where it is satisfied that the defendant has been guilty of wrongful conduct constituting a necessarily included offense. Likewise, a defendant has no legitimate interest in compelling the jury to adopt an all or nothing approach to the issue of guilt. Our courts are not gambling halls but forums for the discovery of truth.' . . . [¶] Instructions on lesser offenses are required because a procedure which affords the trier of fact no option other than conviction or acquittal when

the evidence shows that the defendant is guilty of some crime but not necessarily the one charged, increases the risk that the defendant may be convicted notwithstanding the obligation to acquit if guilt is not proven beyond a reasonable doubt. The pressures which create that risk thus affect the reliability of the fact finding process and thereby undermine the reasonable doubt standard." (*Ibid.* [citations omitted]; see also *People v. Woods* (1991) 226 Cal.App.3d 1037, 1052-1053 [277 Cal.Rptr. 269].)

 The concern expressed in *Geiger* that the jury may choose to convict the defendant of a crime not proven rather than allow him to "get away" is relevant in the present case. Here, the jury sent the court a note asking, "If we find the defendant not guilty of one/second degree murder or [voluntary] manslaughter, is involuntary automatically ruled in?" The jury was obviously confused by the court's striking the words involuntary manslaughter from some of the instructions but not others. However, the jury's note also suggests it wanted to consider involuntary manslaughter because it did not believe the evidence supported an intent to kill. The jury was denied that opportunity by the court's reply to the note instructing the jury "[i]nvoluntary manslaughter is not at issue in this case."

Furthermore, this is not a case in which the omitted factual issue—intent to kill—was resolved against the defendant under some other properly given instruction. (*People v. Sedeno* (1974) 10 Cal.3d 703, 721 [112 Cal.Rptr. 1, 518 P.2d 913].) Only the second degree murder instruction presented the jury with the theory the defendant committed homicide without the intent to kill. The jury rejected second degree murder. (See *People v. Welch, supra,* 137 Cal.App.3d at pp. 840-841.)

## II. DEFENDANT IS ENTITLED TO TWO ADDITIONAL DAYS OF PRESENTENCE CREDIT.

Defendant contends, and the People concede, he is entitled to two additional days of presentence custody credit.

### DISPOSITION

The judgment of conviction for voluntary manslaughter is reversed and the cause remanded to the superior court with directions to enter a judgment of guilty of involuntary manslaughter if the prosecutor consents to forego prosecuting defendant for voluntary manslaughter and to resentence defendant accordingly; or in the alternative, to set the cause for retrial if the prosecutor does not so consent. If the defendant is resentenced, the sentence

shall reflect the defendant's custody credits consistent with the views expressed herein. In all other respects the judgment is affirmed.

Lillie, P. J., and Woods (Fred), J., concurred.