Filed 12/15/15  P. v. Rabadi CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B254991 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PA068573) |
| v. | |
| NAJEB RABADI, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Harvey Giss, Judge.  Affirmed as modified.

Andrew Reed Flier for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria Wilson and Margaret E. Maxwell, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In his first trial, Najeb Rabadi was convicted of several criminal offenses, including robbery, but the jury was unable to reach a verdict as to the sentencing enhancement allegations. In his second trial, the jury found true the allegation that Rabadi had personally used a firearm during the commission of the robbery. On appeal, Rabadi alleges reversible error in both proceedings. The Attorney General requests correction of the sentence with respect to fines and penalties. We affirm the judgment as modified.

## FACTUAL AND PROCEDURAL BACKGROUND

In separate incidents in 2010, Rabadi was involved in a hit and run automobile accident and also seized a woman's purse in a store parking lot, later using her credit cards to make purchases. As a result, Rabadi was charged with second degree robbery (Pen. Code,[1] § 211), with sentencing enhancements alleged under section 12022.53, subdivision (b) and 12022.5, subdivision (a); leaving the scene of an injury accident (Veh. Code, § 20001, subd. (a)); grand theft by access card (§ 484g, subd. (a)); identity theft (§ 530.5, subd. (a)); and two counts of second degree commercial burglary (§ 459).

### I.     First Jury Trial

Evidence was presented at the first trial that Rabadi and Jeny Vazquez had a close platonic relationship. Over time, Rabadi became aggressive and demanding toward Vazquez; she feared him and felt she could not say no to him. In April 2010 she moved to get away from him; but Rabadi found her and convinced her that he would treat her better in the future, causing her to resume their relationship. By August 2010, Rabadi had begun threatening to hurt Vazquez and her family if she did not comply with his demands. He said that if she did not do what he wanted, he would kill her and take her daughter. He claimed to know where Vazquez's sisters lived and worked and that he could cause them to lose their jobs. Rabadi also threatened to have Vazquez and her family deported. When Vazquez tried to break away from Rabadi, he told her she would

---

[1]     Unless otherwise indicated, all further statutory references are to the Penal Code.

2

have to pay him to go away.  Vazquez did not go to the police because she had heard that the police treated people who were not American citizens badly.

Vazquez owned a white 1997 Chevrolet Blazer.  Rabadi began using the Blazer in August 2010.  Vazquez let him use it because she feared he would be mean to her or hurt her if she disappointed him.

On August 19, 2010, Rabadi asked to use Vazquez's Blazer, but she refused because she was planning to use it that evening.  Her plans changed, and Vazquez ended up parking the Blazer on the street near her sister's residence in Newhall at approximately 5:00 or 5:30 p.m.  At around 9:00 p.m., Rabadi, driving Vazquez's Blazer, rear-ended a car and pushed it into another car in the Northridge area.  Rabadi left the scene of the accident without exchanging information with the drivers of those vehicles.

Later that evening, Vazquez discovered that the Blazer was gone.  It was recovered by the police the following day with the front bumper and hood pushed in and the front license plate missing.  Vazquez did not ask Rabadi whether he had taken her car because she was afraid of him.  She simply went to the Department of Motor Vehicles to get new license plates.

On September 8, 2010, Rabadi drove Vazquez and her daughter to a Costco in Northridge.  In the parking lot, he told Vazquez to switch seats with him because he was going to grab someone's bag.  Vazquez protested until Rabadi threatened to hurt her and showed her a small gun that appeared to be a revolver.  Vazquez was frightened for herself and her daughter.

Rabadi told Vazquez that he was going to get out of the car, grab a bag, and then come back; her job was to drive out of the parking lot without hitting any cars.  He put on a camouflage mask that covered his face except for his eyes.  Rabadi left the Blazer with the gun.

Tami Brennan was in the Costco parking lot loading her purchases into her Chevrolet Suburban.  She had placed her white purse, which contained her wallet, cell phone, checkbook, and credit cards, inside the rear cargo area.  A man ran into her from

3

behind, then grabbed her purse. Brennan grabbed her purse back and said, "No." The man told her he was taking the purse, and they struggled over it for a few seconds.

As they struggled over the purse, the man looked at Brennan and then looked downward, causing her to look down as well. She saw something under his sweatshirt or jacket that "resembled something like a weapon of some sort." One of the man's hands was on the purse, and the other was placed on the weapon-like item under the sweatshirt or jacket at waist level. The item was not visible, but it looked to Brennan to have the shape of a handgun. Upon seeing this, Brennan was scared and let go of the purse. She would not have let go unless she believed it was a gun.

The man ran away with the purse toward a waiting white sport-utility vehicle. Brennan began to give chase but abandoned her pursuit based on concerns for her safety. She memorized the vehicle's license plate number. When the police arrived, the license plate number Brennan gave them matched the number on the new license plates on Vazquez's Blazer.

Rabadi had come back to the Blazer with a white purse and the gun. He put the gun between his legs and began to rummage through the purse, removing credit cards and identification. At Rabadi's direction, Vazquez drove to a nearby Target store. On the way, Rabadi removed six bullets from the gun. He told Vazquez to wipe them off, and she did so. The bullets were placed in a blue box in the Blazer.

Rabadi made multiple purchases using Brennan's credit cards at two Target stores. Surveillance cameras recorded him inside one Target and entering a white Chevrolet SUV in the parking lot. Rabadi also instructed Vazquez to fill the Blazer with gasoline using a stolen credit card, but Vazquez twice thwarted the transactions by entering a zip code different than that found on Brennan's identification.

Rabadi was arrested on September 10, 2010, after leaving the scene of another accident in Vazquez's Blazer. When impounded, the Blazer contained items taken from Brennan, bullets, and some of the items purchased at Target along with receipts for the purchases. Fingerprints matching Rabadi's were found on two Target receipts found in the Blazer.

4

The jury found Rabadi guilty on all counts but was unable to reach a verdict on the enhancement allegations. The court set the matter for retrial on the enhancement allegations.

## II.    Second Jury Trial

At the second trial, Vazquez testified that Rabadi had coerced her into cooperating in the Costco robbery by pointing a revolver with a black handle at her. Brennan testified that during the robbery, her assailant nodded downward toward his midsection, causing her to look down as well. She saw that he was holding something protruding from underneath his clothing. Brennan thought it was a gun, because it appeared to be the size of a gun and was shaped like a gun. It was pointed toward her midsection. Brennan felt that it was being displayed to her in a menacing manner. She acknowledged that she did not know whether it was in fact a gun, but she had the impression that it was. The item was configured like a gun, sized like a gun, held like a gun, and pointed at her like a gun. Based on her belief that the assailant had a gun, Brennan was more afraid and let go of her purse.

Costco employee Calvin McGreggor testified that he was in the parking lot retrieving shopping carts when he heard a woman scream. He saw a man holding a white purse in one hand and a dark handgun in the other. When McGreggor talked to the police at the scene, he did not tell them that he had seen a gun because he did not want to get involved and feared he would be subpoenaed to testify and would have to miss work for court.

After the presentation of evidence, the enhancement allegation under section 12022.5, subdivision (a), was dismissed at the prosecutor's request. The jury found the enhancement allegation under section 12022.53, subdivision (b), to be true.

Rabadi was sentenced to 17 years in state prison: five years for the robbery plus 10 years for the sentence enhancement under section 12022.53, subdivision (b); and three consecutive eight-month terms for leaving the scene of the accident and the two commercial burglaries. Sentences for the grand theft and the identity theft were imposed

5

and stayed under section 654. At sentencing, the trial court stated, "The court will impose a restitution fine in the amount of $300, a security fee of $30, a construction fee of $30, and a $20 DNA assessment on each count per count." The abstract of judgment states that Rabadi is ordered to pay a $120 court operations assessment (§ 1465.8); a $120 conviction assessment (Gov. Code, § 70373); a $20 DNA assessment (Gov. Code, §§ 76104.6, 76104.7); victim restitution in the amount of $717 (§ 1202.4, subd. (f)); and a $1,200 restitution fine (§ 1202.4, subd. (b)). The court imposed but suspended a $1,200 parole revocation fine. Rabadi appeals.

## DISCUSSION

### I.     First Trial:  Failure to Give Grand Theft Instruction

Rabadi argues that the trial court erred during the first trial when it refused his request to instruct the jury on the lesser included offense of grand theft from the person with respect to the robbery charge. An instruction on a lesser included offense must be given only when there is substantial evidence which, if believed by the trier of fact, would absolve the defendant of the greater offense, but not of the lesser offense. (*People v. Breverman* (1998) 19 Cal.4th 142, 162.) We review the trial court's decision not to instruct on a lesser included offense under a de novo standard of review. (*People v. Trujeque* (2015) 61 Cal.4th 227, 271.)

Theft is a lesser and necessarily included offense of robbery, with robbery having the additional element of a taking by force or fear. (*People v. Davis* (2005) 36 Cal.4th 510, 562.) Rabadi contends that there was sufficient evidence from which the jury could have concluded that he took Brennan's purse without force, warranting a grand theft from the person instruction. Rabadi dismisses the evidence that he used a weapon to commit the robbery by noting that he had not used a weapon when he committed prior purse snatches and claiming that it was not proven that a weapon was used because the jury in the first trial was unable to reach a verdict on the firearm enhancement allegations. He minimizes the evidence concerning the handgun and characterizes the incident as "a classic purse snatch," dismissing Brennan's efforts to grab her purse back because they

6

lasted only a few seconds. According to Rabadi, the few seconds that he and Brennan both "had their hands on the purse did not preclude the instruction from being given."

What did, however, preclude the instruction from being given was the substantial evidence of force or fear and the absence of evidence that the offense was merely grand theft from the person. Brennan testified that Rabadi banged against her, then grabbed her purse from the cargo area of her vehicle while she was off-balance. Before Rabadi could escape with the purse, Brennan grabbed it back, and they struggled over the purse. This evidence showed that Rabadi employed force to take the purse from Brennan's immediate presence. While brief, the struggle over the purse continued until Rabadi directed Brennan's attention downward to the object he held in one hand concealed beneath his jacket, an object that appeared to be a gun. The only reasonable inference from this conduct was that Rabadi wanted Brennan to believe that he had a gun so that she would experience fear and stop resisting. Rabadi observes that the jury failed to make findings on the firearm enhancements, but that is not relevant; all that is necessary to establish the element of fear for the purposes of a robbery is for the evidence to show conduct, words, or circumstances reasonably calculated to produce fear. (*People v. Morehead* (2011) 191 Cal.App.4th 765, 775 (*Morehead*).) Because the evidence was inconsistent with the absence of force or fear, the trial court was not required to instruct the jury with respect to the offense of grand theft from the person.

## II.     Second Trial: Advisement that Rabadi Had Been Convicted of Robbery in the First Trial

Before the second trial began, the trial court consulted with the parties concerning what, if anything, the jury in the second trial should be told about Rabadi's robbery conviction. The prosecutor argued that the court should advise the jury of the conviction, while defense counsel argued that doing so would be "extremely prejudicial." The court decided to advise the jurors that Rabadi had already been convicted of robbery and to explain that the only issue remaining for the jurors to decide was whether Rabadi used a handgun within the meaning of the enhancement statutes when he robbed Brennan: "The

court pursuant to Evidence Code section 452[, subdivision] (d) will take judicial notice that in a previous jury trial the defendant Najeb Rabadi was convicted of the September 8, 2010 robbery of Tami Brennan. [¶] This trial that I'm just referring to and [from] which the robbery conviction resulted was some time in February of 2012. [¶] This is a fact that the jury must accept. As a result you will not be called upon to render a verdict on the robbery. The verdict from that previous case stands. [¶] The issue that you must consider as it relates to a possible verdict or verdicts in this case is whether pursuant to Penal Code section[s] 12022.53[, subdivision] (b) and 12022.5[, subdivision] (a) the defendant Najeb Rabadi personally used a handgun in a robbery of Tami Brennan, that robbery having occurred on September 8, 2010. [¶] You are not to use the robbery for any other purposes unless and until you are advised that you may do so." Over the course of the trial the court made several similar comments to the jury, each of which advised jurors that the robbery was not being tried anew and that only the question of the firearms enhancements remained to be decided.

Rabadi contends that the trial court erred. He asserts that the trial court erroneously relied on dicta in a footnote in *People v. Burns* (2011) 198 Cal.App.4th 726. *People v. Burns* involved a retrial on a charge of felony use of tear gas. (*Id*. at p. 728.) At the retrial, the court erroneously relied upon collateral estoppel and told the second jury that the defendant had been convicted by the prior jury of aggravated trespassing concerning the same incident. (*Ibid*.) The Court of Appeal concluded that collateral estoppel could not support this advisement because collateral estoppel applies only to final judgments, and the aggravated trespassing conviction had not been affirmed on appeal. (*Id*. at pp. 731-733.) In a footnote, however, the Court of Appeal restricted the reach of its opinion, noting that its decision would not "prevent[] the trial court from retrying an enhancement provision and instructing the jury that the defendant has already been convicted of the substantive offense." (*Id*. at p. 733, fn. 3.) Moreover, the court noted that it did not hold that a jury can never be apprised of an earlier conviction that has become final, but only that under the circumstances of the case, collateral estoppel did not justify advising the jury that the defendant was a trespasser. (*Ibid*.) Rabadi ignores

8

the court's very circumscribed ruling concerning collateral estoppel and pronounces that *Burns* "shed light on the issue" by "noting that if an appeal was pending, it was error to instruct the jury on the conviction." Rabadi does not discuss the *Burns* court's limitations on the scope of its decision and dismisses the footnote itself as dicta without further discussion. He has not established any error here.

Rabadi, moreover, has not established any prejudice from this asserted error. He argues that the "constant emphasis of Rabadi already being the robber of Brennan at Costco being presented to the jury over and over" was prejudicial, but he fails to identify how the enhancement allegations could have been retried without the jury being advised that it had already been established that Rabadi was the robber. Retrial of the sentencing facts before a new jury is proper without a retrial of the underlying crime. (*People v. Anderson* (2009) 47 Cal.4th 92, 123-124.) It was appropriate, therefore, for the court to limit the jury's consideration of the evidence to the enhancement allegations and to advise the jury that its fact-finding was restricted to the question of whether Rabadi used a firearm within the meaning of the enhancement statutes while committing the robbery. In service of his argument that the enhancement would not likely have been found true absent the jury being advised of the robbery conviction, Rabadi characterizes the evidence of firearm use as weak because Brennan never actually saw a gun. However, Brennan perceived an item that was highly suggestive of a weapon, and there was evidence from Vazquez and McGreggor that Rabadi possessed a gun during the robbery. There was, therefore, sufficient evidence from which the jury could conclude that the item to which Rabadi drew Brennan's attention during the robbery was in fact a gun. Given that the jury had to be informed that the issue of whether a robbery had occurred had already been decided to properly circumscribe the scope of its fact-finding at the second trial, Rabadi has failed to establish any prejudice from the court's advisement to the jury that Rabadi had already been convicted of robbing Brennan.

9

### III.  Second Trial:  Modification of CALCRIM No. 3146

In both trials, the trial court modified CALCRIM No. 3146, the standard jury instruction for use with a sentencing enhancement allegation under section 12022.53, subdivision (b), to provide further information on the element of displaying a firearm. The modification of the instruction in the first trial is not at issue in this appeal because the jury did not make any finding on the enhancement allegation in that proceeding. Rabadi alleges error in the modification of the instruction in the second trial.

CALCRIM No. 3146 provides that a person personally uses a firearm if he or she intentionally does any of the following:  displays the weapon in a menacing manner; hits someone with the weapon; or fires the weapon.  (CALCRIM No. 3146.)  In this case, the court modified the language concerning the display of the weapon to add, "A firearm is displayed when, by sensory perception, the victim is made aware of its presence."  This language comes directly from *People v. Jacobs* (1987) 193 Cal.App.3d 375, 380-381.)  In *Jacobs*, the victim never actually saw the firearm:  the defendant said he had a gun and then reached inside his jacket and cocked the gun's hammer, making a sound that the victim recognized as the sound of a gun being cocked.  (*Id*. at p. 379.)  In *Jacobs* the court determined that this conduct could qualify as the handgun being "displayed" within the meaning of a similar firearms enhancement statute, ruling that "a firearm is displayed when, by sensory perception, the victim is made aware of its presence."  (*Id*. at p. 381.) *Jacobs* has been cited with approval by this court and others.  (See, e.g., *Alvarado v. Superior Court* (2007) 146 Cal.App.4th 993, 1004-1005; *People v. Dominguez* (1995) 38 Cal.App.4th 410, 421-422 (*Dominguez*).)  Even the courts that have criticized or distinguished *Jacobs* (see, e.g., *People v. Thiessen* (2012) 202 Cal.App.4th 1397, 1404-1405; *People v. Granado* (1996) 49 Cal.App.4th 317, 325), have not called into question the principle that a display of a firearm is established when a defendant deliberately makes the presence of a gun known to the victim.  The court's modification of CALCRIM No. 3146 was a correct statement of the law, and the language in *Jacobs* on

10

which the instructional modification was based was not "unauthorized dicta" as Rabadi contends but the holding of the court.

Rabadi argues that the modification necessarily confused the jury, but he has not established that the language added to the jury instruction was confusing. On the evidence presented in this case the modified language appropriately clarified the meaning of "displayed" for the jury's use in ascertaining whether a firearm was displayed for the purpose of the charged enhancement.

## IV.     Second Trial:  Rejection of Rabadi's Proposed Jury Instruction

At the second trial, the court refused to give this special instruction proposed by Rabadi:  "In Mr. Rabadi's first jury trial the jury could not decide on whether Mr. Rabadi had a firearm or whether or not Mr. Rabadi personally used a firearm in the commission of the robbery in which he was convicted.  Therefore, a mistrial was declared."  The court rejected this instruction because the evidence was not the same in both cases, the wording was inappropriate, and it would have communicated to the jury that "somebody else has already decided that a hung jury should occur."

In a cursory argument, Rabadi argues that the jury in the second trial should have been advised that the first jury was unable to reach a verdict on the firearm enhancement allegation because the jury was told about the robbery conviction; it would have been fair; and it was supported by the pleadings, proof, and evidence.  He contends, without explanation, that the absence of this instruction affected the verdict; and he asserts, without citations to the record, that the court had told counsel earlier in the trial that the jury would be advised of the prior hung jury.

Rabadi has not established any error.  As we have already discussed, the jury in the second trial needed to know that it was not within the scope of its duties to determine whether the robbery took place, only to make a finding on the enhancement allegation; it was proper for the court to advise the jury that Rabadi had already been found to have robbed Brennan.  The converse, however, was not true:  It was not necessary for the second jury to know that the first jury had been unable to reach a verdict on the

11

enhancement allegations for it to carry out its obligations at the second trial.  *Sills v. Los Angeles Transit Lines* (1953) 40 Cal.2d 630 and *People v. Glenn* (1991) 229 Cal.App.3d 1461, abrogated on other grounds by *People v. Blakeley* (2000) 23 Cal.4th 82, at page 91, upon which Rabadi relies, are inapposite.  These cases stand for the proposition that each party is entitled to have his or her theory of the case submitted to the jury in accordance with the pleadings and the evidence, and that it is incumbent upon the trial court to instruct on all vital issues in the case.  (*Sills*, at p. 633; *Glenn*, at p. 1465.)  Rabadi, however, has not identified any defense theory of the case that would have been supported by knowing that the first jury deadlocked, nor can we conceive of any relevance of that deadlock to the second jury in the performance of its fact-finding duties at a second trial.  Finally, Rabadi has not provided any support for his assertion that the absence of this instruction prejudicially affected the jury's verdict.  As Rabadi has neither established error nor resultant prejudice, he has not demonstrated any basis for reversal.

### V.     Second Trial:  Denial of Mistrial Motion

At the second trial, the prosecutor elicited Vazquez's testimony that she was from Mexico, that she was not a United States citizen, and that Rabadi had threatened to have her deported.  The prosecutor then asked Vazquez, "Did he ever say anything about Mexicans in your presence?"  Vazquez answered yes, and when the prosecutor asked what he had said, she responded, "That Mexicans were worthless."  The court immediately instructed the jury to disregard the testimony.  Outside the presence of the jury Rabadi moved for a mistrial.  The court denied a mistrial but offered Rabadi's counsel the opportunity to draft an admonition for the jury.  When court resumed, the court again admonished the jury to disregard the testimony.

A trial court must grant a motion for a mistrial when a party's chances of receiving a fair trial have been irreparably damaged.  (*People v. Avila* (2006) 38 Cal.4th 491, 573.)  "Whether a particular incident is incurably prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions."  (*People v. Haskett* (1982) 30 Cal.3d 841, 854.)  We review a trial court's

12

choice to employ an admonition rather than grant a mistrial for an abuse of discretion. (*People v. Williams* (1997) 16 Cal.4th 153, 210.)

Rabadi argues that the court should have granted his motion for a mistrial. He contends that because at least four jurors had Hispanic last names, Vazquez's testimony "had to have prejudiced this case." He notes that the case was close, the jury was not immediately convinced, and the jury requested a read-back of proceedings during its deliberations. He argues that the prosecutor's "unfair approach" should have resulted in a mistrial and that such information should never be a part of a trial.

Rabadi's arguments fail to demonstrate any abuse of discretion by the trial court in giving a curative instruction to the jury rather than granting a mistrial. "Ordinarily, a curative instruction to disregard improper testimony is sufficient to protect a defendant from the injury of such testimony, and, ordinarily, we presume a jury is capable of following such an instruction." (*People v. Navarrete* (2010) 181 Cal.App.4th 828, 834.) Rabadi has not demonstrated any reason to depart from that presumption here. Rabadi has not established that the jurors were unable to follow the court's multiple instructions to disregard the testimony, and we decline his implicit argument that jurors who, based on conclusions drawn from their surnames, may have been of Hispanic background, would be unable to follow the court's instructions to disregard the testimony because it involved a racist statement about Mexican people. Moreover, the fact that the jury did not find the enhancement allegation to be true immediately, but requested a read-back of proceedings, tends to show that the jury was not reflexively making findings based upon Rabadi's racist comment but upon the evidence presented at trial. Finally, while it would have been preferable if the prosecutor had not pursued this line of inquiry in the first place, and the statement was properly excluded under Evidence Code section 352, characterizing this elicitation of testimony as an "unfair approach" does not tend to establish that the jury was unable to follow the trial court's admonition to disregard the testimony. Rabadi has not established an abuse of discretion.

13

## VI.    Second Trial:  Requested Rereading of Closing Argument

During deliberations, the jury in the second trial asked for transcripts of the testimony of two police officers and McGreggor, and of the defense closing argument. The court advised counsel, "The closing arguments of the defense will be denied to the jury because it is not evidence."  Defense counsel asked that the court read back his closing argument and permit reargument if the jury had questions.  The court declined.

The court advised the jury that no closing argument would be read back to them because argument was not evidence.  The court explained that the testimony they requested from the police officers was available immediately, but that the testimony of McGreggor had been transcribed by a different court reporter and there would be a delay while that court reporter, or her notes, could be brought to court.  The court asked the jury whether it preferred to hear the available testimony immediately or to wait until all requested testimony was ready.  The jury elected to hear the officers' testimony and to continue deliberations while waiting for McGreggor's testimony.  Later, the jury advised the bailiff that it no longer needed McGreggor's testimony.

A court is not required to permit argument to be read back to the jury, but may allow it in its discretion.  (*People v. Gordon* (1990) 50 Cal.3d 1223, 1260, overruled on another ground in *People v. Edwards* (1991) 54 Cal.3d 787, 835.)  Rabadi interprets the court's comment that no argument would be read back because it was not evidence as the trial court's refusal to exercise its discretion based on an erroneous belief that it lacked authority to do so.  While the statement may be ambiguous, as Rabadi suggests, the court's statement is as consistent with the court's exercise of its discretion to deny the read-back as it is with a conclusion that the court believed it lacked authority to allow it. We do not presume that the trial court erred.  To the contrary, it is a cardinal rule of appellate review that a judgment or order of the trial court is presumed correct.  On matters as to which the record is silent, the appellate court will indulge all intendments and presumptions to support the judgment, and error must be affirmatively shown. (*People v. Giordano* (2007) 42 Cal.4th 644, 666.)  As the record does not clearly indicate

14

that the court erroneously believed itself to lack discretion to permit the argument to be read back, Rabadi has not established error.

## VII. Both Trials: Sufficiency of the Evidence

Rabadi contends that the evidence was insufficient to support his robbery conviction and the firearms enhancement. "'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.] We determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.] In so doing, a reviewing court 'presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citation.] The same standard of review applies to the sufficiency of the evidence supporting special circumstance findings. [Citation].)" (*People v. Edwards* (2013) 57 Cal.4th 658, 715.)

Rabadi makes a series of arguments with respect to the evidence. First, he argues that "the evidence simply does **not** support these final verdicts." (Emphasis in original.) The evidence, however, is sufficient to support the conviction and enhancement. The jury at the first trial heard evidence that Rabadi took Brennan's purse by force and by fear. Rabadi contends that this was a purse snatching accomplished with neither force nor fear, but the jury at the first trial could reasonably have concluded otherwise based on the evidence that Rabadi banged into Brennan hard enough that she lost her balance; that he and she engaged in a struggle over the purse; that Rabadi directed Brennan's attention downward toward an item under his clothes that appeared to be a weapon pointing at her; and that she relinquished her grasp of her purse out of fear. The force element was established by the physical force employed by Rabadi and the struggle over the purse; and the evidence also supported a conclusion that Rabadi used fear to obtain the property

15

by engaging in conduct reasonably calculated to produce fear—gesturing toward what appeared to be a concealed weapon. (*Morehead*, *supra*, 191 Cal.App.4th at p. 775 [fear need not be the result of an express threat or the use of a weapon; the record must show conduct, words, or circumstances reasonably calculated to produce fear].)

At the second trial, the jury heard evidence from Brennan that although she did not see the actual weapon, during the struggle over her purse her assailant directed her attention to what appeared to be a gun pointed at her under his clothes. The item was very close to her; it had the outline of a gun and was the size of a gun; and she believed it to be a gun. Moreover, the jury heard evidence from Vazquez that Rabadi left her Blazer with a gun and returned with a gun, and it heard McGreggor's testimony that he saw the robber with a gun in one hand and a white purse in the other. Finally, the jury heard evidence that Rabadi unloaded the gun and left the bullets in the Blazer, and bullets capable of being fired from a revolver were recovered from the Blazer after Rabadi's arrest. Taken together, this evidence supported the jury's finding that Rabadi personally used a firearm in the robbery within the meaning of section 12022.53, subdivision (b). Rabadi used the gun by drawing Brennan's attention to it and pointing at her; these constituted the display of the weapon and a threat to use it against her. (See *Dominguez*, *supra*, 38 Cal.App.4th at p. 421 ["The evidence is sufficient to prove the use of a firearm where there is some type of display of the weapon, coupled with a threat to use it which produces fear of harm in the victim"].)

Rabadi also argues that "with all of the factual issues, coupled with certain prejudicial evidentiary rulings, Rabadi was deprived of a Fair Trial (*sic*) as to both of his trials." Rabadi has not appealed any evidentiary rulings, nor does he make any argument as to how he claims to have been deprived of a fair trial. When a party appeals, that party may not rest on the bare assertion of error but must present argument and legal authority on each point raised. (*People v. Stanley* (1995) 10 Cal.4th 764, 793.) Rabadi has forfeited this claim.

Rabadi observes that the first jury was not able to reach a verdict on the firearm enhancement, and he argues that this and the duration of the jury's deliberations "raises

16

grave concerns pertaining to the reliability of the verdict in Rabadi's second trial." This argument, unsupported by any authority, fails to identify any insufficiency in the evidence or any cognizable error at trial. Rabadi then lists a series of what he believes to be weaknesses in the evidence as to the robbery and the enhancement; for instance, Brennan and McGreggor not identifying Rabadi as the robber; Brennan not actually seeing the firearm and not being able to testify that it was in fact a gun; McGreggor's testimony changing and not being credible; no gun being recovered; the absence of testimony about where the weapon came from or what happened to it; that Rabadi's prior crimes were grab-and-snatch thefts without force. These arguments are essentially an invitation to reweigh the evidence, which this court cannot do. We neither reweigh the evidence nor reevaluate the credibility of witnesses. (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.) If the circumstances reasonably justify the findings made by the trier of fact, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. (*Ibid.*)

## VIII. Cumulative Error

We reject Rabadi's final contention that the cumulative effect of the claimed errors deprived him of due process of law and a fair trial. Because we have found none of the claims to constitute individual errors, they cannot as a group constitute cumulative error. (*People v. Sanders* (1995) 11 Cal.4th 475, 565.)

## IX. Abstract of Judgment

At sentencing, the trial court stated, "The court will impose a restitution fine in the amount of $300, a security fee of $30, a construction fee of $30, and a $20 DNA assessment on each count per count." Rabadi was convicted on six counts, but the abstract of judgment reflects that these amounts were levied against Rabadi four times. The Attorney General requests that the abstract of judgment be modified to use a factor of six for the first three assessments, and that the DNA assessment be recalculated to comport with applicable law. Discrepancies between the abstract of judgment and the

17

judgment orally pronounced are subject to correction at any time. (*People v. Scott* (2012) 203 Cal.App.4th 1303, 1324.) We consider each assessment in turn.

With respect to the restitution fine pursuant to 1202.4, subdivision (b), we acknowledge the discrepancy between the judgment as pronounced and the abstract of judgment: when the court orally pronounced the judgment it did not expressly limit the restitution fine imposed to those counts not stayed pursuant to section 654. It is error to impose restitution fines under section 1202.4, subdivision (b), with respect to counts that are stayed pursuant to section 654. (*People v. Carlson* (2011) 200 Cal.App.4th 695, 710.) The abstract of judgment, therefore, represents the application of the court's sentencing principle—$300 per count—to all counts to which that sentencing principle could legally be applied. We find no error here.

The abstract of judgment concerning the assessments pursuant to section 1465.8 and Government Code section 70373, however, must be amended to correspond to the court's oral pronouncement imposing these assessments for each of the six counts. These fees apply to each count of which a defendant has been convicted, regardless of a section 654 stay. (*People v. Sencion* (2012) 211 Cal.App.4th 480, 483-484.) In addition, the amount of the assessment under section 1465.8 was incorrect. The amount of this assessment is determined at the time of the conviction. (See *People v. Davis* (2010) 185 Cal.App.4th 998, 1000 [construing analogous Gov. Code section 70373 as operating as of the date of conviction].) At the time that Rabadi was convicted of these offenses, section 1465.8, subdivision (a) provided for a $40 assessment for every conviction of a criminal offense. (Former § 1465.8, subd. (a), as amended by Stats. 2011, c. 40, § 6.) Therefore, the abstract of judgment must therefore be amended to reflect an assessment under Government Code section 70373, subdivision (a) in the amount of $180 rather than $120, and an assessment under section 1465.8 in the amount of $240 rather than $120.

The Attorney General finally argues that the $20 DNA penalty assessment (Gov. Code, §§ 76104.6, 76104.7) must be modified to impose a $5 assessment for every $10 of the assessments imposed pursuant to section 1465.8, subdivision (a) and Government Code section 70373, subdivision (a). By this argument the Attorney General requests

18

that this court impose penalty assessments that are expressly prohibited by California law.  Both section 1465.8 and Government Code section 70373 provide that assessments authorized by those statutes do not permit DNA penalty assessments under Government Code sections 76104.6, subdivision (a), and 76104.7, subdivision (a).  (§ 1465.8, subd. (b); Gov. Code, § 70373, subd. (b); *People v. Valencia* (2008) 166 Cal.App.4th 1392, 1396.)  As DNA penalty assessments also may not be imposed based on restitution fines (Gov. Code, §§ 76104.6, subd. (a)(3)(A); 76104.7, subd. (c)(1)), the trial court did not impose any fine, penalty or forfeiture that may be the subject of a DNA penalty under Government Code sections 76104.6 or 76104.7.  Therefore, the DNA penalty was unauthorized and the judgment must be modified to strike it.

## DISPOSITION

The judgment is modified to strike the $20 DNA penalty; to reflect an assessment under Government Code section 70373, subdivision (a) in the amount of $180; and to reflect an assessment under Penal Code section 1465.8 in the amount of $240.  The superior court is directed to prepare a corrected abstract of judgment and to forward a certified copy of the abstract of judgment to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.


ZELON, J.

We concur:


PERLUSS, P. J.


SEGAL, J.