Filed 4/18/23  P. v. Fleming CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

THE PEOPLE,

    Plaintiff and Respondent,

v.

SCOTT ROBERT FLEMING,

    Defendant and Appellant.

2d Crim. No. B315836
(Super. Ct. No. 19CR06812)
(Santa Barbara County)

---

Scott Robert Fleming appeals from the judgment entered after a jury had convicted him of voluntary manslaughter based on conscious disregard for human life.  (Pen. Code, § 192, subd. (a).)[1]  The victim suffered a fatal brain injury after appellant had punched him in the face.  The blow caused the victim to fall backward, striking the back of his head against a hard surface.

Appellant admitted one prior serious felony conviction (§ 667, subd. (a)(1)) and one prior strike within the meaning of California's "Three Strikes" law.  (§§ 667, subds. (b)-(i), 1170.12,

---

[1] All statutory references are to the Penal Code.

subds. (a)-(d).)  The trial court denied appellant's motion to dismiss the strike.  He was sentenced to prison for 27 years: the upper term of 11 years, doubled to 22 years because of the prior strike, plus five years for the prior serious felony conviction.

Appellant maintains that, during closing argument, the prosecutor erroneously informed the jury that it must find "[t]he natural consequences of [his] act were dangerous to human life.  Not the natural and probable [consequences]."  Appellant claims the prosecutor should have explained that "where a defendant is charged with voluntary manslaughter [based on conscious disregard for human life] . . . , the People must prove that the [defendant's] act had an objectively high probability of death."  Appellant argues that the prosecutor's misstatement of the law constituted prejudicial misconduct because "[t]his was . . . a close case as to whether appellant's act of punching [the victim] had an objectively high probability of causing death."

Appellant also claims: (1) the trial court erroneously failed to clarify the jury instruction on voluntary manslaughter, and (2) the matter must be remanded for resentencing because of recent Penal Code amendments that apply retroactively to him.  We disagree and affirm.

*Facts*

Appellant and Eric Romero were friends.  One night they were drinking together with other friends at a pub.  After leaving the pub, appellant and one of his drinking companions (not Romero) got into a fight.  The fight broke up, and the drinking companion walked away.

Appellant "was still fired up."  Romero "was . . . trying to calm him down."  They were standing "in front of each other" on the sidewalk.  A witness testified: Romero was "backing away"

2

from appellant.  Appellant threw "a sucker punch . . . really quick . . . and hit [Romero] . . . right in the face."  "I don't think [Romero] saw it coming."

The witness continued: When Romero was hit, he was standing "on the edge of the curb."  He "fell straight backwards onto the street and hit his head."  The witness heard a "really loud" "smack, a slap."  "[W]hat really stands out was the crack when he hit the ground."  Romero went "totally limp."  Appellant ran away.

Romero sustained several skull fractures.  The cause of death was a "catastrophic irreversible brain injury from malignant cerebral edema," i.e., swelling of the brain.

Appellant did not testify.

### Voluntary Manslaughter

"Manslaughter is 'the unlawful killing of a human being without malice.'  (§ 192.)  A defendant lacks malice and is guilty of voluntary manslaughter in 'limited, explicitly defined circumstances . . . .'"  (*People v. Lasko* (2000) 23 Cal.4th 101, 108.)  "[V]oluntary manslaughter requires either an intent to kill or a conscious disregard for life."  (*People v. Bryant* (2013) 56 Cal.4th 959, 970; see also *People v. Parras* (2007) 152 Cal.App.4th 219, 224 ["voluntary manslaughter may . . . occur when one kills with a conscious disregard for life but no intent to kill"].)

### The Prosecutor Did Not Misstate
### The Law During Closing Argument

"Although counsel have broad discretion in discussing the legal and factual merits of a case [citation], it is improper to misstate the law."  (*People v. Bell* (1989) 49 Cal.3d 502, 538.)  Appellant contends the prosecutor misstated the law during closing argument when he said the People must prove that "[t]he

3

natural consequences of the act [i.e., appellant's punch to Romero's face,] were dangerous to human life. Not the natural and probable. Just the natural consequences of the act were dangerous to . . . human life." Appellant asserts, "[W]here a defendant is charged with voluntary manslaughter, . . . the People must prove that the act had an objectively high probability of death."

The prosecutor did not misstate the law or mislead the jury. The prosecutor's statement is in accord with CALCRIM No. 572, the instruction for voluntary manslaughter that was given to the jury. It provides: "[T]he People must prove that: [¶] 1. The defendant intentionally committed an act that caused the death of another person; [¶] 2. *The natural consequences* [not the natural and probable consequences] *of the act were dangerous to human life*; [¶] 3. At the time (he/she) acted, (he/she) knew the act was dangerous to human life; AND [¶] 4. (He/She) deliberately acted with conscious disregard for human life." (Italics added.)

The prosecutor's statement is also in accord with the current version of the CALJIC instruction for voluntary manslaughter, No. 8.40, which was not given to the jury: "The phrase, 'conscious disregard for life,' as used in this instruction, means that a killing results from the doing of an intentional act, *the natural consequences of which are dangerous to life*, which act was deliberately performed by a person who knows that his or her conduct endangers the life of another and who acts with conscious disregard for life." (West's California Jury Instructions, Criminal (Oct. 2022 update), italics added.)

CALCRIM No. 572 is consistent with the law of implied malice: "'Malice is implied when the killing is proximately caused

4

by "'an act, *the natural consequences of which are dangerous to life*, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life.'"'" (*People v. Cravens* (2012) 53 Cal.4th 500, 507, italics added (*Cravens*).) Appellant acknowledges that "[t]he threshold elements of implied malice (i.e., conscious disregard) are . . . identical for murder and voluntary manslaughter, with the distinction between the two offenses turning on whether malice is mitigated," i.e., malice is mitigated for voluntary manslaughter but not for murder.

We reject appellant's assertion that "the *mental state* required for implied malice, for both voluntary manslaughter and murder, requires an act for which death is an objectively probable result." (Italics added.) (See *Cravens*, *supra*, 53 Cal.4th at p. 508, italics added ["we must determine whether there is sufficient evidence to satisfy both the physical and the mental components of implied malice, the physical component being "'the performance of 'an act, the natural consequences of which are dangerous to life,'"' and *the mental component being "'the requirement that the defendant 'knows that his conduct endangers the life of another and . . . acts with a conscious disregard for life'"'*"], italics added.)

In support of his argument that "the People must prove that the act had an objectively high probability of death," appellant cites Justice Liu's concurring opinion in *Cravens*, *supra*, 53 Cal.4th at pp. 512-514.) Justice Liu noted that in a concurring opinion in *People v. Thomas* (1953) 41 Cal.2d 470, 480, Justice Traynor had "said implied malice is shown when 'the defendant for a base, antisocial motive and with wanton disregard for human life, does an act that involves *a high degree*

5

*of probability that it will result in death.'"* (*Cravens, supra,* 53 Cal.4th at p. 512, conc. opn. of Liu, J., italics added.) Justice Liu referred to Justice Traynor's concurring opinion as the "*Thomas* formulation." (*Ibid.*)

But Justice Liu did not say that the *Thomas* formulation is correct. He said: "Today's opinion does not mention *Thomas*'s formulation of the objective component. The court cites only the *Phillips* formulation [*People v. Phillips* (1966) 64 Cal.2d 574] in 'find[ing] sufficient evidence that the manner of the assault and the circumstances under which it was made rendered the natural consequences of defendant's conduct dangerous to life.' [Citation.] The court's omission of the *Thomas* formulation continues the erosion of that test . . . ." (*Cravens, supra,* 53 Cal.4th at p. 513.) "[B]y omitting the *Thomas* test when defendant and the Court of Appeal have clearly relied on it, today's opinion suggests (but does not hold) that the *Phillips* formulation matters in a close case such as this."[2] (*Id.* at p. 514.) CALCRIM No. 572 follows the *Phillips* formulation.

Appellant asserts that "the prosecutor clearly . . . misstated the law by arguing that there was no element of probability for voluntary manslaughter." But the prosecutor correctly noted that the element of probability applies to the issue of causation. The prosecutor explained to the jury, "[A]n act causes the death if the death is the direct and natural and *probable consequence* of the act." (Italics added.)

The prosecutor's explanation of causation is in accord with CALCRIM No. 572, which provides: "An act causes death if the

_____

[2] *Phillips was* overruled on another ground as stated in *People v. Flood* (1998) 18 Cal.4th 470, 490, fn. 12.)

6

death is the direct, natural, and probable consequence of the act and the death would not have happened without the act. A *natural and probable consequence* is one that a reasonable person would know is likely to happen if nothing unusual intervenes." (Italics in original.)

Accordingly, the prosecutor did not misstate the law on voluntary manslaughter and therefore did not commit prejudicial misconduct.

*The Trial Court Was Not*
*Required to Clarify CALCRIM No. 572*

Appellant concedes that the "[t]he jury instructions were technically accurate . . . ." Nevertheless, he argues that the trial court "erred by failing to clarify the jury instructions" because CALCRIM No. 572, "combined with the prosecutor's misstatement of the law, created ambiguity as to the objective element of probability for implied malice," thus "impact[ing] appellant's fundamental rights."

During its deliberations, the jury requested that the court provide "[c]lassical examples of voluntary manslaughter. For example, hypotheticals taught in law school." The court denied the request. It suggested that the jury review CALCRIM No. 572 "as well as the entirety of the evidence that you have previously received in the trial." Appellant asserts: "[I]t is reasonable to conclude that the prosecutor's misstatement [of the probability requirement] contributed at least indirectly to the jury's desire for further guidance. However, the trial court passed up the opportunity to clarify the probability requirement or the source of the jury's confusion. Instead, the court redirected the jury to the ambiguous instructions already given. . . . [¶] The trial court thus erred by failing to adequately respond to the prosecutor's

7

misstatement of the law and the jury's request for additional instruction on voluntary manslaughter."

We disagree. As we have shown in the preceding section of this opinion, the prosecutor did not misstate the law. Moreover, the jury did not request additional instruction on the elements of voluntary manslaughter. It requested "[c]lassical examples of voluntary manslaughter," such as "hypotheticals taught in law school."

In any event, appellant forfeited the issue by inviting the trial court to not grant the jury's request but to instead refer the jury to CALCRIM No. 572. Appellant's counsel said, "The defense position is just going to be to refer them back to the instructions to look at [Calcrim No.] 572." "The doctrine of invited error applies to estop a party from asserting an error when 'his own conduct *induces the commission of error*.'" (*People v. Perez* (1979) 23 Cal.3d 545, 549, fn. 3.) Furthermore, "[a] trial court has no sua sponte duty to revise or improve upon an accurate statement of law without a request from counsel [citation], and failure to request clarification of an otherwise correct instruction forfeits the claim of error for purposes of appeal." (*People v. Lee* (2011) 51 Cal.4th 620, 638.)

However, we "may also review any instruction given, . . . even though no objection was made thereto in the lower court, if the substantial rights of the defendant were affected thereby." (§ 1259.) Appellant has not shown that the trial court's alleged failure to clarify the "probability requirement" affected his substantial rights. The prosecutor and CALCRIM No. 572 explained that this requirement applies to the causation element of voluntary manslaughter. Appellant acknowledges "that the jury instructions given here contained a paragraph about

8

causation that included the terms 'natural and probable' and correctly framed the probability element as an objective query."

*Appellant's Claims Concerning*

*Recent Sentencing Amendments*

Appellant claims: "[T]his case must be remanded for resentencing based on the retroactive application of Senate Bill No. 567 (2021-2022 Reg. Sess.) ('SB 567') and Assembly Bill No. 518 (2021-2022 Reg. Sess.) ('AB 518'), both of which took effect after the trial court sentenced appellant." The People concede that SB 567 and AB 518 apply retroactively to appellant.

<u>SB 567</u>

"'Senate Bill No. 567 . . . amended section 1170, subdivision (b), making the middle term of imprisonment the presumptive sentence.' [Citation.] 'A trial court may impose an upper term sentence only where there are aggravating circumstances in the crime and the defendant has either stipulated to the facts underlying those circumstances or they have been found true beyond a reasonable doubt.'" (*People v. Berdoll* (2022) 85 Cal.App.5th 159, 163 (*Berdoll*).) But "the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (§ 1170, subd. (b)(3).)

Appellant contends his upper term sentence must be reversed because the jury made no factual findings as to aggravating circumstances. In imposing the upper term, the trial court relied on aggravating factors set forth in the probation report and "highlighted" by the prosecutor. The court said it was "in agreement" with "the sentencing factors that probation lays out."

9

According to the probation report, there are no mitigating factors. The report lists the following aggravating factors: "1. The crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness [citation]. [¶] The victim . . . was trying to de-escalate the situation and calm the defendant down when the defendant attacked him with a 'sucker punch' that knocked him unconscious, and caused him to fall and suffer fatal injuries. The strike was vicious and, since the victim was not participating in the fighting and playing the role of peacemaker, especially callous and cold-hearted. [¶] 2. The defendant has engaged in violent conduct that indicates a serious danger to society [citation]. [¶] 3. The defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness [citation]. [¶] 4. The defendant has served a prior term in prison or county jail under §1170(h) PC [citation]. [¶] 5. The defendant was on probation when the crime was committed [citation]. [¶] 6. The defendant's prior performance on probation and parole was unsatisfactory [citation]."

At the time of sentencing in October 2021, appellant was 32 years old. The trial court said the probation report "highlighted some five full pages of criminal history . . . dating all the way back to 2004 as a juvenile. . . . [O]f those 16 criminal matters that were commented upon, eight . . . involved violence by [appellant] upon another just as we had in the matter before this Court regarding young Eric Romero." No one disputes the accuracy of the probation report.

The People argue that any error in imposing the upper term was harmless because "[i]t is evident beyond a reasonable

10

doubt that the jury would have found that appellant suffered the alleged prior convictions and that appellant's prior performance on probation and parole was unsatisfactory."  Furthermore, "the trial court relied on factors in aggravation that were supported by the record, namely that appellant had an extensive criminal history, prior prison terms, and poor performance on probation and parole.  [Citations.]  Therefore, the record clearly indicates that the trial court would not impose a more favorable sentence upon remand . . . ."

The probation report lists numerous sustained juvenile petitions for criminal offenses.  It enumerates the following adult felony convictions: (1) 2008 – Assault with a deadly weapon. (§ 245, subd. (a)(1).)  This is both the prior strike and the serious felony conviction.  Appellant was placed on probation, but his probation was revoked and he was sentenced to prison for four years.  (2) 2009 – Infliction of physical or mental suffering on an elder.  (§ 368, subd. (b)(1).)  (3) 2012 – Assault by means of force likely to produce great bodily injury.  (§ 245, subd. (a)(1).)  (4) 2013 – Resisting an executive officer.  (§ 69.)  Appellant was sentenced to prison for two years, eight months.  He was subsequently convicted of misdemeanor offenses in 2017, 2018, and 2019.

""""[I]f a reviewing court concludes, beyond a reasonable doubt, that the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found true at least a single aggravating circumstance had it been submitted to the jury," the error is harmless. . . .'" (*Berdoll, supra,* 85 Cal.App.5th at p. 163, quoting from *People v. Flores* (2022) 75 Cal.App.5th 495, 500.) "On this record we are satisfied, beyond a reasonable doubt, the jury would have found true [more than] one aggravating

11

circumstance. . . . Thus, remand for resentencing . . . is unnecessary." (*Flores*, *supra*, at p. 501.) "To remand would achieve the same sentencing result and would be a waste of judicial resources." (*Berdoll*, *supra*, at p. 165.)[3]

AB 518

The information consisted of three counts based on the same act – appellant's punch to Romero's face. Count 1 was the voluntary manslaughter charge. Count 2 charged assault by means of force likely to produce great bodily injury. (§ 245, subd. (a)(4).) Count 3 charged battery causing serious bodily injury. (§ 243, subd. (d).) Appellant was convicted of all three offenses. The trial court imposed upper-term sentences on counts 2 and 3 but stayed execution of the sentences pursuant to former section 654.

AB 518 amended section 654, which "prohibits multiple punishment for any single act or omission. If a single action or course of conduct by a defendant violates multiple laws, 'the distinct crimes may be charged in separate counts and may result in multiple verdicts of guilt, [but] the trial court may impose sentence for only one offense. . . .' [Citation.] Until recently, the

---

[3] Appellate courts are divided on the standard for assessing prejudice when determining whether a case should be remanded for resentencing in light of SB 567. (See, e.g., *People v. Lopez* (2022) 78 Cal.App.5th 459, 465-466 ["In order to conclude that the trial court's reliance on improper factors that were not found true by a jury or admitted by Lopez was not prejudicial, we would have to conclude beyond a reasonable doubt that a jury would have found true beyond a reasonable doubt *every factor on which the court relied*"].) The issue is pending before our Supreme Court in *People v. Lynch* (May 27, 2022, C094174) [nonpub. opn.], review granted Aug. 10, 2022, S274942.

law required trial courts to impose sentence 'under the provision that provides for the longest potential term of imprisonment.' (Former § 654 . . . .) . . . Assembly Bill No. 518 . . . removes the requirement to impose the longest prison term. As the preamble to the bill explains, it allows 'an act or omission that is punishable in different ways by different laws to be punished under either of those provisions.'" (*People v. Sek* (2022) 74 Cal.App.5th 657, 673.)

Appellant maintains that, "[b]ecause Count 1 [voluntary manslaughter] carried a longer sentence than Counts 2-3, [pursuant to former section 654] the trial court . . . imposed the sentence for Count 1 . . . and stayed the sentence for Counts 2-3 . . . ." Appellant argues, "[T]his case should be remanded so that the trial court can exercise its newly granted discretion to impose a lesser sentence among Counts 1-3."

"'Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court. [Citations.] A court which is unaware of the scope of its discretionary powers can no more exercise that "informed discretion" than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record.' [Citation.] In such circumstances, we have held that the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.'" (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391 (*Gutierrez*).)

The trial court did not say it was imposing the longer sentence for voluntary manslaughter because it was required to do so by former section 654. The record "clearly indicates" the

13

court would have declined to exercise its discretion to lessen appellant's sentence had it been aware it had such discretion under amended section 654. (*Gutierrez, supra,* 58 Cal.4th at p. 1391.) If the court had wanted to lessen appellant's sentence, it could have done so by granting his motion to dismiss the prior strike. Instead, the court denied the motion.

The trial court was particularly disturbed that so many of appellant's offenses had involved violence and that he had refused to accept blame for his actions: "[T]hroughout your adult life, you are often blaming others for your actions." "[I]t is very, very difficult for you to ever acknowledge any blame for your actions over the years. And that difficulty is really troubling to the Court." The court noted that "there were no mitigating factors" but "[t]here were numerous aggravating factors."

The probation report clearly shows that the longer sentence for voluntary manslaughter was warranted. In his closing evaluation, the probation officer wrote: "To the defendant's detriment, the reckless and vicious aggression he demonstrated at the time of the instant offense was not an isolated incident for him, as his prior record illustrates. While an adult, he has recklessly harmed strangers by throwing rocks at their vehicles as they drove, causing injuries . . . ; he has viciously attacked an elderly apartment manager when he was confronted for loitering, causing injuries . . . ; he has viciously attacked a girlfriend's ex-boyfriend with the butt of a knife during a confrontation, causing injuries . . . ; and he has attacked a woman at a bus stop in order to steal her purse . . . , which speaks loudly to his pattern of aggression and randomly attacking others unsuspectingly. These prior instances of violence, like the instant offense, appear to have been unprovoked and the result of the defendant's

14

willingness to needlessly harm others when angered.  Despite . . . having been afforded numerous Court-related interventions over the years, the defendant has made no apparent rehabilitative progress.  Unfortunately, his prior incarcerations, probation grants, and state prison commitments did not serve as effective deterrents for him or inspire him to change his lifestyle and attitude."

*Disposition*

The judgment is affirmed.

NOT TO BE PUBLISHED.

YEGAN, J.

We concur:

GILBERT, P. J.

BALTODANO, J.

Thomas R. Adams, Judge

Superior Court County of Santa Barbara

_____

Mark R. Feeser, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Ivri, Supervising Deputy Attorney General, David A. Wildman, Deputy Attorney General, for Plaintiff and Respondent.